OTTO LOBECK, ADMINISTRATOR, APPELLANT, V. LEE-
    CLARKE-ANDREESEN HARDWARE COMPANY ET
    AL., APPELLEES.

FILED JUNE 6, 1893.    No. 4750.

1. **Partnership**: SURVIVING PARTNERS: LIABILITY TO ACCOUNT
    FOR GOOD-WILL OF FIRM.    Upon the dissolution of a partner-
    ship firm by the death of one of its members, the surviving part-
    ners may carry on the same line of business at the same place
    as was transacted the firm business, without liability to account
    to the legal representative of the deceased partner for the good-
    will of said firm, in the absence of their own agreement to the
    contrary.

2. ———: SALE BY REPRESENTATIVE OF DECEASED PARTNER'S
    INTEREST.    Where the legal representative of a deceased mem-
    ber of a partnership firm, as such, without words of limitation,
    joins in the sale of all the stock and fixtures of such firm to
    the surviving members thereof, such legal representative cannot
    maintain an action against such survivors for the good-will of
    said firm or for any portion thereof.

APPEAL from the district court of Douglas county.
Heard below before WAKELEY, J.

*Cowin & McHugh* and *Gregory, Day & Day,* for appel-
lant:

Good-will is a proper subject of sale or bequest. (Green-
wood, Public Policy, p. 729.)    The good-will of a busi-
ness is property and held and treated as independent of
either the stock, fixtures or place.    (*Sheppard v. Boggs,* 9
Neb., 258; *Wallingford v. Burr,* 15 Id., 204, 17 Id., 137;
*Austen v. Boys,* 4 Jurist n. s. [Eng.], 719.)    The good-will
does not survive, but is partnership property; if not dis-
posed of by consent, it must be sold like other partnership
effects. (*Dougherty v. Van Nostrand,* 1 Hoffman Ch. [N.Y.],
68; Lindley, Partnership, p. 443; *Hall v. Barrows,* 4 De
Gex, J. & S. [Eng.], 150*.)

*John L. Webster, contra:*

The good-will of the firm passed to the survivors of the firm on the death of Fried. The plaintiff had no interest therein. (3 Kent, Com., p. 64; *Hammond v. Douglas*, 5 Ves. [Eng.], 539; *Farr v. Pearce*, 3 Mad. [Eng.], 74; *Lewis v. Langdon*, 7 Sim. [Eng.], 421; Parsons, Partnership, pp. 274, 461; *Robertson v. Quiddington*, 28 Beav. [Eng.], 529.)

RYAN, C.

In the month of March, 1881, Henry J. Lee, C. A. Fried, E. M. Andreesen, and H. T. Clarke entered into a written agreement whereby they associated themselves as partners under the firm name of Lee, Fried & Co., for the purpose of dealing at wholesale in nails, hardware, and tinners' stock. This partnership business was to commence in March, 1881, and to expire January 1, 1883, after which it continued probably upon the same terms as provided in said contract, though we find in the record no direct evidence of any agreement as to such continuance. The business was carried on by the firm of Lee, Fried & Co. until the death of C. A. Fried, which occurred August 16, 1887; indeed, even then, matters continued as before, except that Otto Lobeck, having qualified as executor of the estate of C. A. Fried, acted in place of said decedent. On the 30th day of December, 1887, Henry J. Lee, Henry T. Clarke, Edward M. Andreesen, and one John T. Clarke entered into a written contract, to which said executor, as such, was a party, of which contract the following is a copy:

"This contract, made on the 29th day of December, A. D. 1887, by and between the surviving partners of the firm known as Lee, Fried & Co., to-wit, Henry J. Lee, Henry T. Clarke, Edward M. Andreesen, and Otto Lobeck, executor of the estate of C. A. Fried, deceased, parties of the first part, and Henry J. Lee, Henry T. Clarke, Edward M.

Andreesen, and John T. Clarke, parties of the second part, witnesseth, that for and in consideration of the covenants hereinafter contained, to be kept and performed by the respective parties to this contract, the parties of the second part agree to form a corporation prior to January 2, A. D. 1888, to be known as Lee-Clarke-Andreesen Hardware Company, for the purpose of conducting a general hardware business; the said parties of the first part agree to sell to such corporation when formed, and said parties of the second part, as such corporation, agree to buy the stock, fixtures, and good-will of the business owned and conducted by the former firm of Lee, Fried & Co. at the market value thereof, as per inventory taken between December 26 and December 31, A. D. 1887; said stock to be inventoried with freight added. The said parties of the second part, as such corporation, agree to pay, and the said parties of the first part agree to accept therefor, stock in said corporation at par value, or part cash, at the option of said corporation; said transfer to take place January 1 or 2, A. D. 1888. The said parties of the first part agree to pay all outstanding indebtedness of said firm; the said parties of the second part, as such corporation, agree to make collection of all outstanding accounts of said old firm without cost to said parties of the first part, unless for extraordinary expenses, such as attorney's fees, court costs, etc.; said collections, when made, to be turned over to said parties of the first part or an authorized representative, and to be used on paying the liabilities of the old firm of Lee, Fried & Co.; and the parties of the first part agree among themselves that the stock in said corporation received in payment for the stock, fixtures, and good-will of said partnership shall be apportioned and partitioned among the surviving members of said firm and the executor of C. A. Fried, deceased, according to their interest in the partnership, as the same may appear from the books of account of said partnership; provided, however, that if the said Otto

Lobeck, executor of the estate of C. A. Fried, deceased, shall elect to receive money in lieu of said stock for the interest of his decedent in said partnership, then the other members of said partnership, to-wit, Henry J. Lee, Henry T. Clarke, and Edward M. Andreesen, shall purchase from said Lobeck the amount of stock in said corporation to which his decedent would be entitled as a member of said partnership, at its par value, each an equal one-third of said stock, to be paid therefor in money.

"Witness our hands this 30th day of December, A. D. 1887.                    LEE, FRIED & CO.,

"HENRY J. LEE,

"LEE, FRIED & CO.,

"HENRY T. CLARKE,

"EDWARD M. ANDREESEN,

"OTTO LOBECK,

"*Administrator with will attached,*

"*Parties of the First Part.*

"HENRY J. LEE,

"HENRY T. CLARKE,

"EDWARD M. ANDREESEN,

"JOHN T. CLARKE,

"*Parties of the Second Part.*"

Consistently with the terms of the above contract the said Henry J. Lee, Henry T. Clarke, Edward M. Andreesen, and John T. Clarke organized a corporation under the name of Lee-Clarke-Andreesen Hardware. Company, which took possession of the entire property invoiced as described in the aforesaid written agreement and the bill of sale, executed January 16, 1888, of which the following is a copy:

"Know all men by these presents, that, for a valuable consideration, we, Henry J. Lee, Henry T. Clarke, and Edward M. Andreesen, surviving partners of the late firm of Lee, Fried & Co., have bargained and sold, and by these presents do bargain and sell, unto the Lee-Clarke-

14

Andreesen Hardware Company the stock of hardware, warehouse, and fixtures of said late firm, according to the inventory taken between December 26 and December 31, 1887, amounting to $198,436.75, together with the good-will of the business of said late firm. To have and to hold the said property and good-will unto the said Lee-Clarke-Andreesen Hardware Company, its successors and assigns, forever. This bill of sale being made in execution of said contract dated December 29, 1887, for the sale of said property.

"Witness our hands this 16th day of January, 1888.

"LEE, FRIED & CO.
"EDWARD M. ANDREESEN.
"H. T. CLARKE.
"H. J. LEE."

It does not satisfactorily appear why the above bill of sale was not signed by Otto Lobeck as the representative of C. A. Fried, for, while it purports to be made to carry into execution the written contract of date December 29, 1887, in which said Lobeck, in his representative capacity, appeared as one of the parties of the first part, he seems by common consent to have been omitted from even mention in the bill of sale. It might be inferable from the draft of date December 31, 1887, made by Otto Lobeck, as administrator of C. A. Fried's estate, upon the firm of Fried & Co. in favor of C. O. Lobeck, for $5,000, that the said administrator had elected to, and had thereby in part consummated his said election to withdraw from said firm. If this satisfactorily appeared, the determination of this appeal would be much simplified. As the evidence does not explain the non-joinder of Lobeck as administrator in the bill of sale, and as it does not point to sufficient certainty of intent to warrant placing great stress upon it, the bill of sale will be assumed to have been made in execution of the contract entered into on December 29, 1887, and upon that assumption the rights of the parties will be considered without reference to said draft.

This action was brought in the district court of Douglas county by Otto Lobeck, as the representative of C. A. Fried, against the Lee-Clarke-Andreesen Hardware Company, Henry J. Lee, Henry T. Clarke, and Edward M. Andreesen. The prayer of the petition was that said defendants be required to make a just and fair inventory and valuation of the good-will acquired as above described, and be required to account for the same, either by the issuance of stock or in money, as to the court should seem equitable and proper, and for such other and further relief as to the court might seem meet.

The answer, in addition to other denials which need not be detailed, denied that the good-will was of any value, but alleged that it passed incidentally with the stock of goods purchased; that the invoice covered such good-will, and that by said executor having accepted payment on account of the interest of the estate of his decedent under the terms of said written agreement, he was estopped to make claim for the value of the good-will of the firm of Lee, Fried & Co. There was a reply, which was in substance a denial of the various affirmative matters pleaded in the answer.

On the 11th day of February, 1891, a trial was had to the court, upon which the court found for the defendants and adjudged that the cause be dismissed for want of equity and that said defendants recover their costs. During the trial of the case plaintiff offered to show the value of the good-will of the firm of Lee, Fried & Co. as a fact independent of, and in addition to, the price paid for the merchandise of said firm purchased by the defendants. This offer of evidence was refused, and in various ways the questions which shall now be considered were properly presented for adjudication. These involve the construction of the contract, between plaintiff and the other parties to the above contract, and the respective rights and remedies of such parties, with reference to the good-will of the firm of Lee, Fried & Co.

Only one member of the firm of Lee, Fried & Co. had died at the date of the above contract, and his executor, with the other members of said firm, constituted the parties of the first part. The parties of the second part were the surviving members of the firm of Lee, Fried & Co., and John T. Clarke. The subject-matter of this contract was "the stock, fixtures, and good-will of the business owned and conducted by the former firm of Lee, Fried & Co." The price to be paid was the market value of the subject-matter of the contract, to be determined as per inventory therein described; said stock to be inventoried with freight added. This contract, however, did not contemplate the purchase by the parties of the second part, as individuals, of the subject-matter thereof, but that such purchase should be made by them as a corporation to be formed thereafter under the name of the Lee-Clarke-Andreesen Hardware Company. Another peculiarity of this contract was in the media of payment. The consideration recited was the keeping and performing of certain conditions, which were payment either wholly or partly in stock of the corporation contemplated at its par value and the balance in cash at the option of said corporation, and the payment of all outstanding debts and the collection of all outstanding accounts of the firm of Lee, Fried & Co. After providing for payments and collections as above, the parties of the first part, Henry J. Lee, Henry T. Clarke, Edward M. Andreesen, and Otto Lobeck, executor of the estate of C. A. Fried, agreed among themselves that such stock as should be issued by the proposed corporation in payment for the stock, fixtures, and good-will of said partnership should be apportioned and partitioned among the surviving members of said firm of Lee, Fried & Co., and the executor of C. A. Fried, deceased, according to the interest of each in the partnership, as such interest appeared by the books thereof; provided that if said executor elected to receive money in lieu of stock for the interest of C. A. Fried, then that

Henry J. Lee, Henry T. Clarke, and Edward M. Andreesen should purchase from said executor the shares of stock to which, as such executor, he would be entitled at its par value.

From this synopsis it is evident (aside from paying the indebtedness of the firm of Lee, Fried & Co., and making collections of its outstanding accounts for that purpose) that each of the said first parties to said contract agreed to accept payment, for the property inventoried, in the stock of the proposed corporation, or partly in stock and the balance in money, at said proposed corporation's option. Among themselves the parties of the first part further agreed that in event payment should be made in the stock of said proposed corporation, it should be divided in a certain manner, with the proviso, however, that if the executor of C. A. Fried should elect to receive money rather than stock, each of the other parties of the first part would pay him in cash one-third of the par value of said stock. This action was brought against the Lee-Clarke-Andreesen Hardware Company, Henry J. Lee, Henry T. Clarke, and Edward M. Andreesen. There is no averment in the petition of any demand for the delivery to plaintiff of stock by the Lee-Clarke-Andreesen Hardware Company nor of a refusal by that corporation to issue stock alone or make payment partly in its stock and partly in money as provided in said agreement. The complaint of violations of the above contract is made solely as against Henry J. Lee, Henry T. Clarke, and Edward M. Andreesen—the said hardware company being only incidentally mentioned as having ratified said contract and assumed all the rights to and secured all the benefits thereof by taking possession of all the property, assets, and estate of the former firm of Lee, Fried & Co., by, through, and under said contract, and appropriating the stock, fixtures, good-will, and certain leasehold interests and estates of said firm of Lee, Fried & Co., for the purpose of specially protecting and securing

the full benefits of the good-will of the last mentioned firm, and as having appropriated the same to their own use and behoof exclusively. As the antecedent portion of the last paragraph had reference solely to the above corporation, it is probable that the closing sentence was intended to be limited in like manner, though it is spoken of in the plural number. However that may be, it is clear that the petition predicated plaintiff's rights upon the primary liability of the surviving members of the firm of Lee, Fried & Co., and as whatever liability may be found to exist as against the Lee-Clarke-Andreesen Hardware Company must in any event, under the averments of the petition, be secondary and only collateral to that of H. J. Lee, Henry T. Clarke, and Edward M. Andreesen, the alleged liability of these three last named parties to the estate of C. A. Fried must necessarily be the test of plaintiff's right of recovery.

As the judgment prayed was for the value of the "good-will" of the firm of Lee, Fried & Co., it may not be without profit to define that term. In *Dougherty v. Van Nostrand*, 1 Hoffman Ch. [N. Y.], 69, it was said: "The good-will of a trade is called by Lord Eldon the probability that the old customers will resort to the old place. (*Cruttwell v. Lee*, 17 Vesey [Eng.], 346.)" In Parsons, Partnership, on marginal page 262*, the term "good-will" is thus discussed: "It is a hope or expectation which may be reasonable and strong and may rest upon a state of things that has grown up through a long period and been promoted by large expenditures of money. And it may be worth all the money it has cost and a great deal more, but it is, after all, nothing more than a hope grounded upon a probability."

These definitions have reference to but one, though the generally employed, use of the term "good-will." In 2 Lawson's Rights, Remedies, and Practice, sec. 685, the same form of good-will is defined, in conjunction with which,

however, is found another meaning which must be taken into account as the sense of the term as treated of in one class of adjudicated cases, of which *Smith v. Walker*, 57 Mich., 456, is an example. This language (italicized to challenge attention to the superadded meaning) is employed in the section above referred to. "The good-will of a business is defined as the benefit which arises from its having been carried on for some time in a particular house or by a particular person or firm, or *from the use of a particular trade-mark or trade-name.* Its value consists in the probability that the old customers will continue to be customers, notwithstanding a change in the firm name or place of business. It is a species of personal property." Still, another meaning is sometimes included in the definition of the term "good-will," as illustrated by the following language quoted from Collyer, Partnership, as embodied in section 161: "The term 'good-will' is used in two distinct senses. It is applied either to an advantage arising from the fact of sole ownership simply, without reference to other persons; or as an advantage arising from the fact of sole ownership, to the exclusion of other persons. The latter species of good-will is founded on special contract, and is a commodity upon which a valuation may be fixed. Therefore, the interest of an outgoing partner in such good-will may be valued and assigned, with the rest of the effects, to the remaining partner. A good-will of this kind being a valuable addition to a trade, and arising as it does in contract, must be created by some appropriate words. It cannot be implied from the general words, stock, effects, etc. Therefore, where one partner had agreed to sell to his copartner 'his inheritance in their nursery for £10,000,' and the other partner, in answer to the proposal, wrote as follows: 'I agree to give you £10,000, as you mention, for your moiety of all your partnership premises, stock, business, and concern,' Lord Eldon held that the purchaser had no right, according to his contract, to claim any good-

will in the trade, in addition to the partnership property which was the subject of it, except what was the necessary effect of his acquiring the sole ownership in the property; certainly not such as to preclude the seller from carrying on the same trade, where, and when, and with whom he pleased."

In section 99 of Story, Partnership, the generally employed definition of this term is given, after which occurs the following language: "But the term 'good-will' is sometimes applied to another case, where a retiring partner contracts not to carry on the same trade or business at all, or not within a given distance. This is an interest which may be valued between the parties, and may therefore be assigned with the premises and the rest of the effects to the remaining partner as an accompaniment of the ordinary good-will of the establishment. Good-will, in the former sense, is therefore an advantage arising from the mere fact of sole ownership of the premises, stock, or establishment, without reference to other persons as rivals; and in the latter sense as an advantage arising from the fact of excluding the retiring partner from the same trade or business as a rival."

In the discussion of adjudicated cases there has not always been kept in view, much less stated, what particular form of good-will was under consideration. For instance, where it is the right to use the trade-mark adopted and made valuable by a firm or an individual, it is readily seen that it has something of the nature of tangible personal property, and as such independently might properly be subject to sale. This form of property is frequently protected by injunction, and, in various ways, is treated as one form of good-will having no analogy to that form under consideration in the case at bar. Again, the term is sometimes applied to the contract obligation to refrain from competition by a retiring partner as against the other members of the firm, either as measured by the extent of territory or duration of time. Such an advantage as this

affords may be of great value, and, having its origin in contract, and being founded upon sufficient consideration, the courts recognize, protect, and enforce it.

Of these forms of good-will which imply a monopoly such as the courts will protect, it has been said that good-will may independently be transferred. This distinction as to the use of the term "good-will" is recognized in the above text quoted from Story and from Collyer on Partnership. Speaking generally, it is believed it will be found that whatever confusion has arisen as to the right to transfer good-will specifically and independently, is referable simply to a failure to distinguish these different forms of good-will. As to that form which must alone be considered in determining this case there is no confusion of interpretation nor conflict of authorities. Treating of it is the following language, quoted from Collyer, Partnership, section 162 : " The former species of good-will is clearly not founded in special contract, but in a combination of accidental circumstances; as the existence and celebrity of the house, the skill and affluence of the trader, or the prejudices or necessities of the customers. This, therefore, is not a tangible interest. It is not a commodity on which a specific value can be placed, or for which a definite allowance can be made. Therefore, upon the death of one partner, it is not stock of which the executor of a deceased partner can compel a division, unless he can also compel a sale of the whole premises and stock, as in the case of a partnership at will. Under these latter circumstances, however, the good-will would accompany the rest of the stock, and might create some additional speculative value in the mind of a purchaser. Accordingly, a court of equity, in this and similar cases, would so treat it that its value should be felt and appreciated by all parties interested in the concern; and therefore, in decreeing a sale of the entire partnership, would order the sale to be so adjusted as to give full effect to the value of the good-will."

In the case of *Austen v. Boys*, 4 Jurist n. s. [Eng.], 719, where the plaintiff sought to recover the value of his alleged good-will in a firm of solicitors, the following language was used by Lord Chancellor Chelmsford : " Where a trade is established in a particular place, the good-will of that trade means nothing more than the sum of money which any person would be willing to give for the chance of being able to keep the trade connected with the place where it has been carried on. It was truly said in argument that ' good-will ' is something distinct from the profits of the business, although, in determining its value, the profits are necessarily taken into account, and it is usually estimated at so many years' purchase upon the amount of those profits. But the term ' good-will ' seems wholly inapplicable to the business of a solicitor, which has no local existence, but is entirely personal, depending upon the trust and confidence which persons may repose in his integrity, and ability to conduct their legal affairs. * * * But this term, however, as used in the agreement of 1846, appears to me to be capable of a definite meaning; and if confined within the limits of the agreement, and as between the parties themselves, it becomes perfectly intelligible. It seems to have been intended to describe that interest which the retiring partner would have had if he had remained in the partnership, and which, by his retirement before its termination he was willing to relinquish to the continuing partner. * * * But it is said that the stipulation as to not practicing within one hundred miles of the post-office, being indefinite, and therefore extending to the whole period of the life of the retiring partner, is inconsistent with the notion of the term ' good-will ' having such a narrow and contracted meaning as would be thus assigned to it. But this argument is founded upon an entire disregard of the different offices of the two stipulations. The one is intended to provide for the sale of the interest in the partnership whenever either partner chooses to retire;

the other is a general engagement, the consideration for which is not merely the benefit obtained on retirement, but the whole of the partnership agreement. * * * I am satisfied that the term ' good-will,' associated as it is with the words ' share and interest,' and being a matter of valuation between the partners themselves, must be confined within the limits of the partnership, and that Mr. Austen is not entitled to any supposed value of his share beyond it."

In *Musselman and Clarkson's Appeal,* 62 Pa. St., 81, was considered the term "good-will" as applicable under the following condition of facts : A banking firm had dissolved and appointed a partner to liquidate, who, immediately following the dissolution, commenced banking in the firm house on his own account, under the firm name, at the same time settling the firm business there. Thompson, C. J., for the court, said that there was no doubt that if under these circumstances this partner had sold the "good-will" he would have been obliged to have accounted for the value received. This opinion discussed the liability of this partner in the following language : " Nor at law was there any obligation on him to pay for the good-will. He did not agree to pay for it, and he did not sell it as such. Nor can I comprehend how it existed independently of the property. There was no relinquishment of business by the partners. Their business expired by its own limitation. They had no exclusive right in the business that existed for a moment after the firm dissolved, or any sole ownership of it as against any others ; and these are the *criteria* of property in good-will according to the English rule. (*Kennedy v. Lee,* 3 Mer. [Eng.], 441 ; Coll. on Part., 156; Story on Part., 369.) But supposing the rule to be more extensive by usage with us, and I think it is, how can there be a good-will in favor of the members of a firm, where the firm has ceased by its own limitation and no exclusive right to follow the business in that place belongs to them ? In that case as a distinct property it is good. It

then attaches to and enhances the realty, and the value of it is realized in selling or renting that."

On marginal page 263 of Parsons on Partnership occurs the following language: "The executor of a deceased partner can realize the share of the deceased in the good-will only when he can compel a sale of the stock and premises, and then the good-will goes with them. For, as a general rule, by the conveyance of a shop or store, the good-will of the business carried on in it passes, although nothing is said about the good-will. And if an executor cannot compel a sale of the premises, or, as it seems, if the premises are not in fact sold, the executor gets no advantage from the good-will, for that remains entirely with the surviving partners who carry on the same business in the same place."

To a proper understanding of the language used by Sir John Romilly, M. R., in *Robertson v. Quiddington*, 28 Beavan's Rep. [Eng.], 529, a brief statement of the facts of the case may not be unprofitable. John Morgan and N. A. Quiddington, in 1836, commenced carrying on a business as tailors, under the firm name of Morgan & Co. In this business Morgan had a two-thirds interest, and at his death, which occurred on the 8th day of January, 1860, John Robertson, by the terms of Morgan's will, became entitled to two-thirds of the interest held by the testator in the good-will of the above mentioned business. On the 23d day of June, 1860, Robertson filed a bill praying that said good-will might be sold and that plaintiff might be declared entitled to four ninth parts of the proceeds of such sale, and for an accounting by Quiddington of all profits made or received by him from the good-will of the business of Morgan & Co. since the decease of Morgan. A demurrer to the bill was sustained on the ground of want of equity. In the consideration of this demurrer the following language was employed: "I fully concur in the observations on both sides, not only that the good-will is a valuable and tangible thing in many cases, but it is never a

tangible thing unless it is connected with the business itself, from which it cannot be separated, and I never knew a case in which it has been so treated.    I am of opinion that even if the executors have assented to this bequest, which I must assume on demurrer, because it is so stated upon the bill, it is not competent for a legatee of two-thirds of a good-will of a deceased partner to file a bill against the legatee of the remaining one-third and the surviving partner, who is entitled to all the rest of the good-will, to have that bequest specifically made good."

From the above consideration of principles and citations from approved text-writers, as well as adjudicated cases, it seems inevitably to result that the surviving partners of the firm of Lee, Fried & Co., in the absence of a restrictive agreement on their part, were entitled to carry on the same line of business as had been transacted by said firm, and at the same place, without accounting for the value of such of the good-will of said firm as thereby accrued to them.    It also seems equally clear that by the purchase of the stock and fixtures of the firm of Lee, Fried & Co. the defendants, in the absence of an express reservation to the contrary, became entitled to whatever good-will attached to the former business of said firm.    It results, therefore, that the judgment of the district court is

AFFIRMED.

THE other commissioners concur.