T. E. BRADBURY, Appellant, v. JESSE O. WELLS ET AL.,
                  Appellees.

**Estates of decedents:** DISCHARGE OF EXECUTOR: IMPEACHMENT FOR
1 FRAUD. An order discharging an executor may be impeached
for fraud or mistake, but the matter must be something ex-
trinsic or collateral to the questions tried upon the original
hearing: therefore the correctness of an executor's report of
a matter is directly involved in his order of discharge and
cannot again be litigated.

**Devise of partnership property:** GOOD WILL. Where one partner
2 devises his entire interest in the partnership business, includ-
ing the location and entire stock in trade, the good will of the
business is necessarily incident to and inseparable from the
devise, and no property right therein falls into the residuum of
the estate.

**Discharge of executor:** GROUND FOR SETTING ASIDE: FAILURE TO RE-
3 PORT ASSETS. Failure of an executor to account for shares in
a corporation having only a nominal existence, owning no
assets or property of any kind, will not warrant the setting
aside of an order discharging the executor, in the absence of a
showing of prejudice; although had objection been raised at
the hearing on the report the worthlessness of the stock might
not have been sufficient excuse for not listing and reporting
the same.

**Same:** UNSOLD REAL ESTATE. Where executors are authorized to
4 sell real estate for the purpose of paying debts and to dis-
tribute the residuum, failure to sell certain real property or to
refer thereto in the final report is not ground for setting aside
the order discharging the executors; since the rights of the
parties therein can be protected without questioning the va-
lidity of the final accounts.

*Appeal from Polk District Court.*— HON. A. H. McVEY,
                  Judge.

WEDNESDAY, APRIL 8, 1908.

REHEARING DENIED, WEDNESDAY, JUNE 10, 1908.

THE opinion states the case.— *Affirmed.*

*A. D. Pugh,* for appellant.

*Myerly & Myerly,* for appellees.

WEAVER, J.— The appellees, Jesse O. Wells and Sarah A. Wells, were the duly appointed executors of the will of Levi J. Wells, deceased. On or about August 8, 1903, they made and filed their final account and report of their trust, and asked to be discharged therefrom. On September 15, 1903, notice of such final account having been given to all parties in interest, the district court examined and approved the same, ordered final distribution of the assets of the estate, and the discharge of the executors. Among the beneficiaries under the will was Levi B. Wells, assignor of the appellant herein. Some time after the discharge of the executors Levi B. Wells claimed to have discovered that the final account and report of the executors were untrue and incorrect in material respects, and made demand upon the appellees for their correction. His demand not being complied with, he assigned his claim to the appellant, who on December 23, 1905, instituted this action in equity to set aside the order approving the report and discharging the executors, and to require further accounting with respect to various matters specified in the petition. The defendants denied all of the plaintiff's allegations of wrong, fraud, and mistake on their part, and pleaded the approval of their report and the order for their discharge as a complete adjudication of the matters sought to be controverted. The district court dismissed the petition, and plaintiff appeals.

For the proper disposition of the question raised by counsel a brief reference to the conceded or well-established facts is necessary. It appears that in his lifetime the testator, Levi J. Wells, was for a long time the owner of a valuable hack and bus line and transfer business in the city of Des

Moines, and that some years prior to his death he associated with him as a partner in said business his son, Jesse O. Wells, one of the appellees. After this partnership was entered into, a form of incorporation was adopted; and the partnership L. J. Wells & Son leased the property and business to this corporation at a specified rental of $1,000 per month, but the profits of the business which continued ever after in the management and control of these two persons were never sufficient to pay such rent in full. So far as appears, no stock was ever issued to or held by any other persons than Levi J. Wells and Jesse O. Wells, twenty-six shares of $100 each to the former, and twenty-four shares of $100 each to the latter, on none of which is anything shown to have been paid. By his will Levi J. Wells, after making provision for his wife, devised and bequeathed to Jesse O. Wells certain described lots, " together with the livery barns, shops, or buildings on said lots or any of them or on the east 44 feet of said lots 5 and 6, in block 10 ; also all horses, carriages, vehicles, harness, tools, furniture, or furnishings of every description belonging to and used in connection with said livery business, blacksmith or repair shops." It is conceded that the real estate thus described (together with a strip six inches wide hereinafter referred to) includes all of the buildings in which and the location upon which the said partnership business had been carried on prior to the death of the testator. It is also conceded that, in addition to the real estate particularly described in the foregoing device, the testator owned adjacent thereto an additional strip of six inches in width, which is not specifically described or mentioned anywhere in said will. In another paragraph provision is made for the benefit of Levi B. Wells, the appellant's grantor. The executors are given authority to sell the undevised property of the testator so far as necessary for the payment of debts, and to distribute the residuum among the testator's heirs according to law. The fraud alleged to have been practiced by the executors, and upon which a reopening of the accounts of the estate is

demanded, consists in: (a) An alleged failure of the executors to charge themselves with the full amount of the balance due to the testator at the time of his death from the partnership of L. J. Wells & Son; (b) failure to account for one-half the value of the good will of the partnership business of L. J. Wells & Son; (c) failure to account for the shares of capital stock owned by the testator in the corporation above mentioned, and (d) failure to sell the undevised six-inch strip of land above mentioned, and distribute the proceeds thereof.

I.   At the threshold of this inquiry, we must consider the effect to be given to the final settlement by the executors and their discharge by the court.   Formerly the statute did not seem to provide for giving any notice of such accounting to the heirs or other parties interested, but any person affected thereby could appear within three months and apply to have the account opened for correction.   Code 1873, section 2475.   Failure to appear and object within the time thus limited was sufficient, even in the absence of notice, to give the order the effect of a final adjudication, subject only to be reopened upon a sufficient showing of fraud or mistake such as would justify the setting aside of other judgments. *Arnold v. Spates,* 65 Iowa, 570; *Kows v. Mowery,* 57 Iowa, 20; *Cowins v. Tool,* 36 Iowa, 82; *Patterson v. Bell,* 25 Iowa, 149.   The rule of the earlier decisions is strengthened and the propriety of refusing to disturb settlements when fraud or mistake is not clearly established is much more apparent under the present statute, which requires notice to be served on all parties in interest before the allowance of a final accounting or the discharge of an executor or administrator. Code, section 3422; *Smith v. Buchanan* (Iowa), 96 N. W. 1086.   It is to be noted, also, that the section of the statute allowing three months in which to move for the vacation of an order discharging executors without a charge or proof of fraud or mistake has been carried forward into the

1. ESTATES OF
DECEDENTS:
discharge of
executor: im-
peachment for
fraud.

present Code, and the relief there afforded is still available. Code, section 3399. That an order discharging an executor may be impeached for fraud or mistake clearly and satisfactorily established will be admitted; but it is not every fraud or every mistake which will have that effect. The matter complained of must be something extrinsic or collateral to the matter tried upon the original hearing, and not a fraud or mistake in the very matter on which the judgment was entered or order made. *Tucker v. Stewart,* 121 Iowa, 716; *Graves v. Graves,* 132 Iowa, 199; *United States v. Throckmorton,* 98 U. S. 61 (25 L. Ed. 93). We are therefore to determine whether any such showing appears in the record of the case before us.

Taking up the first item in the alleged fraud, the discrepancy alleged to exist between the balance reported by the executors on the account due from Jesse O. Wells to the partnership of L. J. Wells & Son and the much greater balance which appellant now computes, and we find the claim thus asserted necessarily involves a reconsideration and retrial of one of the very questions which was tried on the former hearing. In their final report the executors did not suppress the fact of the existence of an account due from Jesse O. Wells to the partnership, for one-half of which the estate was entitled to credit. On the contrary, they conceded the existence of such account, and charged themselves with what they claimed to be the balance due to the testator. The correctness of that showing was one of the matters submitted to the court, and was open to examination and objection by the legatees under the will, all of whom were brought in by notice and appeared in person or by counsel. The books showing the account were presumably in court, or, if not, the court's process would have secured their production upon the demand of any heir or legatee desiring to use them in evidence. No objection appears to have been raised, and judgment was entered approving the report. No appeal was taken therefrom, and such finding must stand as a conclu-

sive adjudication against all of the parties represented at that hearing. Under the rule of the cited cases, the adjudication could not be contested in this proceeding, even if it were capable of being shown that the judgment then entered was procured upon false testimony. As said by the Massachusetts court: "Where a matter has actually been tried, or was so in issue that it might have been tried, it is not again admissible. The party is estopped to set up such fraud because the judgment is the highest evidence." *Greene v. Greene,* 2 Gray (Mass.), 361 (61 Am. Dec. 454) ; *Pico v. Cohn,* 91 Cal. 125 (25 Pac. 970, 27 Pac. 537, 13 L. R. A. 336, 25 Am. St. Rep. 159). If the matter of the existence of the partnership account had been fraudulently suppressed and concealed, so that we could fairly say that the subject had not been presented to or passed upon by the court, it might well be held that the plea of former adjudication is not applicable under the principle recognized in *Tucker v. Stewart,* 121 Iowa, 716, and *Arnold v. Spates,* 65 Iowa, 570. But, as we have already said, the item here in question was not omitted from the adjudication. It may have been incorrect in amount, it may be that the allowance should have been for the larger amount now claimed by appellant, but all of these questions should have been tried upon objection to the item as reported, and their determination necessarily inheres in the judgment.

II. The allegation of fraud in failing to account for the value of the good will of the partnership business is in our judgment without substantial foundation. It may be conceded, for the purposes of this case, that the good will of a partnership business is as a general proposition a partnership asset; but it is property of a peculiar character, and in its very nature not subject to all of the rules and principles applicable to more tangible property. Ordinarily the good will of a business or trade is the mere probability that it will continue in the future as in the past. It is one of the natural advantages

2. DEVISE OF
PARTNERSHIP
PROPERTY:
good will.

which attach to an established and prosperous business that people who have become accustomed to dealing with the proprietor at a given place will probably continue so to do, and that such patronage tends to advertise the business and attract the patronage of others. If the proprietor of such a business sells his shop and goods, the purchaser takes as a necessary incident so much of the good will as attaches to the place or location, and the right to pursue the business thereon. So, also, if a member of a partnership sells his interest in the tangible property and business and retires, he retains no interest in the good will of the firm. Of course, in the absence of any agreement to the contrary, he may withdraw his name, and may set up a competitive business in the same neighborhood, but he cannot take with him or utilize or sell to another any part or share in the good will of the business from which he has retired, save such as is incident to his own personality. It seems equally clear that if a merchant or tradesman or proprietor of any established business, dying, devises to his son or other beneficiary the lot and the building where his business is located, together with his entire stock in trade, the good will passes as necessarily incident to the devise, and no property right pertaining to such business falls into the residuum of the estate. If we were to sustain the appellant's contention, and direct the executors to offer for sale a one-half interest in the good will of the firm for the benefit of the estate, what would the purchaser at such sale acquire? He would not acquire any of the tangible property, for admittedly it was all devised. He would not acquire the right to operate a hack line from that particular stand, for the stand was devised to the appellee subject to no incumbrance of that nature, and the right to operate a hack line from any other stand or location is a common one, open to all the world alike. He could not by such purchase obtain the right to use the partnership name, L. J. Wells & Son, for no person can be authorized to do business in the name of another and upon his credit without his con-

sent. For illustration, let us suppose that the late Marshall Field of Chicago had devised to a named member of his family his great department store, accurately describing its location, together with the entire stock of goods, fixtures, and appliances employed in the business there carried on, but without making any express mention of the good will of the business; would it be claimed for a minute that such good will did not pass as an incident to the devise? No authority has been cited supporting such doctrine, and we think no sound principle can be adduced for establishing such precedent. Ordinarily, though perhaps not universally, good will is a thing having no existence except as it attaches to the tangible property which is sold or devised, and in its very nature, therefore, is incapable of transmission to an administrator as an independent estate. And such we think is the manifest tendency of the authorities. *Howe v. Searing,* 10 Abb. Prac. (N. Y.) 270; *Crashaw v. Collins,* 15 Ves. 224.

Discussing this question, a leading text-writer says that the term " good will " is used in two distinct senses. It is applied, first, to the natural advantage which arises from the fact of sole ownership; and, secondly, to the right of exclusive ownership or exclusive exercise of a business based upon special contract. The latter species of good will is a commodity upon which a valuation may be placed, but the former passes as necessarily incident with the property, and cannot be separated from it. Speaking of a good will of the latter kind, classification in which the good will of the business now in question must be included, the writer says: " This, therefore, is not a tangible interest. It is not a commodity upon which a specific value can be placed, or for which a definite allowance can be made. Therefore, on the death of one partner, it is not stock upon which the executor of the deceased partner can compel a division unless he can compel a sale of the whole premises and stock as in the case of a partnership at will. Under this latter circumstance, however, the good will would accompany the rest of the stock,

and might create some additional speculative value in the mind of a purchaser." Collyer on Partnership, section 162. To the same effect Mr. Parsons, in his work on Partnership (page 262), uses this language: " The executor of a deceased partner can realize the share of the deceased in the good will only when he can compel a sale of the stock and premises, and then the good will goes with them; for, as a general rule, by the conveyance of a shop or store, the good will of the business carried on in it passes, although nothing is said about the good will. But, if the executor cannot compel a sale of the premises or the premises are not in fact sold, the executor gets no advantage with the good will, for that remains entirely with the surviving partners who carry on the same business in the same place."

The same question, involving facts very like those in the case at bar, was considered in *Robertson v. Quiddington,* 28 Beav. 529, where the court says: " The good will is a valuable and tangible thing in many cases, but it is never a tangible thing unless it is connected with the business itself, from which it cannot be separated, and I never knew a case in which it has been so treated." The question has also had thorough consideration at the hands of the Nebraska court, where a conclusion in harmony with the rules we have cited was announced. *Lobeck v. Lee-Clarke-Andreesen Hardware Co.,* 37 Neb. 158 (55 N. W. 650, 23 L. R. A. 795). It is doubtless true that the property devised to Jesse O. Wells was more valuable because of the good will of the business which had been built up thereon by the testator and his son than it would otherwise have been; but we must presume that the testator appreciated this fact, and had it in contemplation in providing for the distribution of his estate among those upon whom he wished to confer his bounty. The question here discussed bears an altogether different aspect than would be presented had Levi J. Wells died intestate. In such cases in the ordinary course of administration the entire property would have been subjected to sale and the value of

the good will of the business presumably have been realized in the added value of the property when placed upon the market by the administrator or surviving partner.

III.   The next in order is appellant's claim that the account should be reopened because of the failure of the executors to charge themselves with the shares held by the testator

3. DISCHARGE OF EXECUTOR: ground for setting aside: failure to report assets.

in the corporation formed by him and his son. If the record made it clearly and satisfactorily appear that this item was omitted from the report by fraud or mistake, and that such shares were or are of any substantial value, we should not hesitate to grant the relief prayed. But in this respect there is failure of proof. The corporation, though organized in due form, appears, in fact, to have had only a nominal existence. As a partnership Levi J. Wells and Jesse O. Wells let the property to themselves as a corporation at a rental which the business could not pay. Between them they held all of the shares of the corporation on which, as we have already noted, nothing had ever been paid. The corporation neither had nor owned any assets or property of any kind. The executors assert that they did not list or report these shares simply because they were of no value. This may not have been considered a good reason for the failure had objection been raised on the hearing; but, the report having been made in apparent good faith, the court will not disturb the order of approval without a sufficient showing that some substantial right of the appellant has been sacrificed by the omission.

IV.   The omission from the report of any reference to the six-inch strip of land affords no ground for exception to the report or for the setting aside of its approval. The fifth

4. SAME: unsold real estate.

paragraph of the will is not entirely clear in its statement of the authority given to the executors over the real estate, but we think it gives no power to sell, except so far as necessary for the payment of debts, and that whatever right or interest the appellant or his assignor ever had in or to the strip of land in question by vir-

tue of the will is in no manner lessened or impaired by the settlement of the estate or the discharge of the executors. That right, if any, may be protected and enforced without calling in question the validity of the executor's final account. Appellees argue that the strip of land, though not expressly mentioned in the will, passed by implication with the devise to Jesse O. Wells. The decision of this appeal does not necessitate a ruling upon the point thus made, and we do not consider it.

It follows from the foregoing that the decree of the district court is right; and it is *affirmed*.