JACKSON G. TUCKER et al., Appellant, v. WM. G. STEWART, Administrator, et al., Appellee.

Estates: VACATION OF FINAL SETTLEMENT. An action to set aside
1    the final report of an administrator on the ground of fraud, may be brought in the district court.

Settlement of Estates: FRAUD: EQUITABLE RELIEF: The settle-
2    ment of an administrator's account is not conclusive as to property fraudulently omitted therefrom, and equity may be invoked to grant proper relief.

Final Report: WAIVER. Where an administrator's report accurate-
3    ly discloses the amount of money held by him at different periods during the administration, it is sufficient to put those interested on inquiry as to his use of the funds and liability for interest, and consent to his discharge is a waiver of any claim for interest, as the same is incidental to the items with which the administrator is charged and is adjudicated by an approval of the report.

Fraud: VACATION OF ADMINISTRATOR'S REPORT. Where an admin-
4    istrator, in making his final account and report, representing that he had paid over to the guardian of minor heirs of the estate the amount of their interest in cash, where in fact he gave the guardian his note for a large part of the fund, and upon such representation obtained his discharge, it amounted to a fraud on the court authorizing the vacation of the order of discharge.

*Appeal from Dubuque District Court.*—HON. FRED O'DON-NELL, Judge.

SATURDAY, OCTOBER 31, 1903.

THE defendant, Stewart, was appointed administrator with the will annexed of the estate of John H. Floyd, deceased, June 27, 1885, and was discharged upon final report April 11, 1890. According to this report, plaintiff and Birdena and Olive Tucker were entitled to $10,681.92 under the will, of which $8,243.46 had already been paid

to their guardian, L. E. Tucker, appointed such December 11, 1889. As a part of such prior payment, the administrator had executed to the guardian his note of $6,000, dated January 2, 1890, payable two years from date, at six per cent. per annum interest. This circumstance was not disclosed in the final report, nor did the administrator mention the continued use of a large amount of the estate's money in his private business, for which he made no accounting of interest. This suit was brought September 24, 1896, to set aside the order of final discharge because obtained by fraud. The relief prayed was denied, and plaintiff appeals.—*Reversed.*

*Henderson, Hurd, Lenehan & Kiesel* for appellant.

*N. E. Utt* and *W. J. Knight* for appellees.

BISHOP, C. J.—The appellee insists that this action ought to have been brought in the probate court. Under chapter 134, page 154, section 7, of the Acts of the Twenty-

1. VACATION of final settlement.

First General Assembly, now section 225 of the Code, the district court was given jurisdiction in all matters of probate. While proceedings in probate are to be distinguished from others, the court in which they are had is the same. *Steiner v. Lenz*, 110 Iowa, 49; *Hendron v. Kinner*, 110 Iowa, 544; *Arnold v. Spates*, 65 Iowa, 570. Besides, this is a suit in equity, and as such maintainable in a court having equitable jurisdiction. Some question is also made as to the statute under which the action is brought. It is enough to say that section 3398 of the Code authorizes it in providing that mistakes in final settlement may be corrected after settlement "by equitable proceedings, on showing such grounds as will justify the interference of the court." As suit was begun within five years after the mistakes complained of were discovered, we need not inquire whether the action was also authorized by section 4091 of the Code. But see *Bunce v. Bunce*, 59 Iowa, 533.

II.   It is urged that the fraud, if any, practiced, is not such as equity will relieve from.   The rule announced by the Supreme Court of the United States in *U. S. v.*

2. SETTLEMENT of estates: fraud: equitable relief.

*Throckmorton*, 98 U. S. 61 (25 L. Ed. 93), is that uniformly followed in this state, though applied without generalization to the facts of each case.   See *Heathcote v. Haskins*, 74 Iowa, 567; *Sigmond v. Bebber*, 104 Iowa, 431; *Dixon v. Graham*, 16 Iowa, 310; *Larson v. Williams*, 100 Iowa, 110; *Miller v. Albaugh*, 24 Iowa, 128; *Clark v. Ellsworth*, 84 Iowa, 525. "Acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered."   Now, can it be said that the matters here involved were incident to, or so essentially connected with, the hearing on the final report, that, although not considered, they must be regarded as adjudicated?   Every liability of the administrator as such might have been determined, and, if the rule is to be applied as broadly as contended for by appellee, it would be utterly impossible to obtain relief in equity against any order of final discharge.   The statement of the account, and objections thereto, if any, are to be regarded as forming the issues to be heard and the subject-matter of the proceeding.   Now, anything which might have been litigated as incidental to, or essentially connected with, this subject-matter, must be regarded as disposed of by the final order.   *Sigmond v. Bebber*, 104 Iowa, 435; *Donahue v. McCosh*, 81 Iowa, 296; *Lamb v. McConkey*, 76 Iowa, 47; *Philips v. Gephart*, 53 Iowa, 396.   But separate and independent items, not included, have not been tried and cannot be held to have been adjudicated. *Arnold v. Spates*, 65 Iowa, 570; *Durham v. Williams*, 32 La. Ann. 971; *McAfee v. Phillips*, 25 Ohio St. 377; *Fish*

*v. Lightner*, 44 Mo. 270; *Sparhawk v. Buell's Adm'r*, 9
Vt. 41, 77; *Smith v. Lambert*, 30 Me. 137, 145. Thus it
was said in *Griffith v. Godey*, 113 U. S. 89 (5 Sup. Ct. Rep.
383, 28 L. Ed. 934), to be "well established that a settle-
ment of an administrator's account by decree of a probate
court does not conclude as to property accidentally or
fraudulently withheld from the account. If the property
be omitted by mistake, or be subsequently discovered, a
court of equity may exercise its jurisdiction in the prem-
ises, and take such action as justice to the heirs of the
deceased or to the creditors of the estate may require,
even if the probate court might, in such case, open its de-
cree, and administer upon the omitted property; and a
fraudulent concealment of property, or a fraudulent dis-
position of it, is a general, and always existing, ground
for the interposition of equity."

III.   The omission to account for interest may first be
considered.   The final report indicated accurately the
amount of money held by the administrator at different
3. FINAL report: periods during the five years of his adminis-
waiver.   tration.   It did not disclose that he had been
making use of it in his own business, although it is evi-
dent a large increase might have been acquired by judic-
ious loaning of the money.   Whether, pending the settle-
ment of the estate, he was required, knowing as he did,
that the funds would be in his hands several years, to so
invest them as to derive some benefit to the estate, need
not now be determined.   But, see *Lommen v. Tobinson*,
52 Iowa, 665; *Dunscomb v. Dunscomb*, 7 Am. Dec. 504;
*Frey v. Demarest*, 17. N. J. Eq. 71; *Clark v. Knox*, 70 Ala.
607 (45 Am. Rep. 93); 11 Am. & Eng. Enc. Law, 950, 1218.
It is enough now to say that in reporting the large balance
constantly on hand he put the heirs on inquiry with re-
spect to the use made of the funds, and with any degree
of diligence they might have ascertained his liability for
interest.   That he might, under the direction of the court,

have loaned the money on approved security, or invested
it in government bonds, appears to be well settled.. The
mere fact that the money was retained for so long a time
suggested inquiry as to the use which had been made of
it. . Now this interest charge is only incidental to the ac-
counting of the moneys of the estate—an increase of the
funds themselves—and, when the final report shows how
long these have been in the hands of the administrator,
those interested in the estate are advised of facts which,
followed up, would inevitably lead to the discovery
whether any liability therefor had attached.    If, not-
withstanding this, they consent to his discharge, it would
seem such consent ought to be deemed a waiver of all
claim to such increment.   In such a case it is incidental
to, and connected with, the very items with which the ad-
ministrator is charged, and hence must be regarded as ad-
judicated.   If this were not the rule, there would be no
stability in final settlements, as they might be set aside
on the subsequent discovery that the officer, in handling
the moneys, had derived from the use of any item some
benefit not expressly stated in the account.   But, aside
from all this, we think the omission to account for interest is
not alleged in the petition.   In the eighth division it is
averred "that there was irregularity in obtaining said
order; that there was fraud practiced by said administra-
tor in obtaining same; that the proceedings in said court,
in connection with said final report, as against said plain-
tiff and said Birdena and Olive Tucker, were erroneous,
and that the errors did not appear in the proceedings;
that there was error in said judgment; and that there was
a mistake in the settlement made by said guardian with
said administrator."   It will be observed that, but for
the statement, "the errors did not appear in the proceed-
ings," this contains conclusions of law only.   It is followed
by two others particularly setting out the circumstances
of the execution of the $6,000 note accepted by the guar-

dian, but the omission of the interest is not mentioned.
These paragraphs were evidently intended to specify the
facts from which the conclusions contained in the eighth
division were inferred.    Had plaintiffs intended to rely
on other facts, they should have been pleaded.

IV.    The final report indicated that $10,681.92 of the
money received by the administrator was due the plain-
tiffs, who were then minors.    This was met by the execu-
tion of Stewart's note of $6,000, paya-
ble in two years, at six per cent. interest,
to the guardian; his son's note, with him-
self as surety, for $2,000, at seven per cent. interest;
and the balance a small note, signed by another, and cash.
There is some controversy concerning the circumstances
under which Tucker was appointed guardian and these
notes taken.    He testified that Stewart offered to sign his
bond, first suggested using some of the money, and finally
executed the note of $6,000, without any previous arrange-
ment as to the amount to be retained or the rate of inter-
est.    On the other hand, Stewart declares, and he is some-
what corroborated, that he at first refused to sign the
bond, but, when informed by Tucker that persons proposed
could not qualify, he consented; that Tucker asked him
if he did not know of some one who would borrow the
money, to which he responded that he did not, but would
look about to find some one; that later he reported he
had learned of no one he could recommend, and thereupon
Tucker inquired if he could not use some of the money in
his business, to which he responded that he could use $6,000,
if at the interest rate of six per cent. per annum, other-
wise his money was ready for the guardian; that when he
executed the note January 2, 1890, he again said the
money was to be ready for Tucker, unless he wanted the
note.    As to the $2,000 note it is enough to say that,
while apparently signed by the defendant as surety, the
record shows it to have been his debt.    Upon the payment

4. FRAUD: vaca-
tion of admin-
istrator's re-
port.

of the balance the guardian signed a receipt in full, and requested that the final report be approved and the administrator discharged. This report failed to disclose the use of the money in the administrator's private business, or to account for interest thereon, and represented payment to the guardian in cash. After reference to a referee, it was approved April 11, 1890, and the order of discharge entered. That the administrator did not then have in his possession any of the moneys of the estate is fully established. In stating otherwise, he misrepresented the situation to the guardian. Now, it is to be observed that Stewart did not stand in the position of an ordinary borrower. Had he occupied such position, and therefore the relation between himself and Tucker been that simply of a borrower and lender in the ordinary course of business, it might well be urged that he had the right to deal with Tucker at arm's length, and this even though it should subsequently be made to appear that Tucker had no legal right to make the loan. Still this could not be resorted to as affecting the legal status of Stewart. Here Stewart had occupied the position of an officer of the court. He had been dealing with a fund placed in his hands in trust as such officer of the court, and he appears to make settlement with Tucker as such officer, supposedly having such trust fund in his possession, and in no sense as one having individual rights apart from, or that could be made the basis of, acts or conduct on his part not in consonance with the strict line of his official duty. Confessedly, he came to the settlement with no money at all. Whether he was solvent in the sense that he had property, upon pledge of which he could have possibly, or even probably, borrowed money, we think is immaterial. Certain it is that no report from him could have been accepted that did not show funds actually in his hands ready to be turned over, or that the funds for which he was accountable had been actually paid over, to the person entitled to receive the

same. And no court would approve of a report showing upon its face that in settling with the successor in trust appointed by the court to have charge of money belonging to minors he had simply given his promissory notes to the amount of the trust fund, it appearing also that such fund had been previously expended by him in the prosecution of his own private business. All of his Stewart was bound to know. As shown by the record, he came to Tucker empty-handed, as far as the trust fund was concerned. This, however, he concealed from Tucker, and represented that he stood ready to pay over. He must be held to have known that Tucker had no right to accept in lieu of the trust fund his simple promise to pay. Tucker is shown to have acted in reliance upon the representation made by Stewart, and; the latter having procured the former to accept of his notes, we think that the transaction amounted in law to a fraud upon Tucker. We also think that in procuring the approval of the report based upon such transaction, but without disclosing the nature and character thereof, amounted to a fraud upon the court. Had Stewart paid over the money to Tucker, and then later on gone to him to procure a loan, a different rule, perhaps, might be held to apply; but we are dealing here with the report of Stewart as administrator, and the sole inquiry is whether or not he has accounted for trust funds in his hands, and not whether Tucker, as guardian, would have been justified in making a loan to him, taking simply his unsecured promissory note in evidence thereof. Independent, therefore, of the question of fraud alleged to have been practiced upon Tucker, we think but one conclusion can be predicated upon the facts. Of course, if it is to be said that a fraud was in fact perpetrated upon Tucker, then the settlement of the administrator's affairs should be set aside; if, on the other hand, it is to be said that both Stewart and Tucker acted advisedly in the.

premises, still the court, whose officers they were, should not, as against the wards of court, give countenance to such a transaction having relation to the trust fund. A report made to the court upon the part of either, setting forth the facts as in truth they existed, could not have met with approval. For the reasons pointed out in this division of the opinion, we think the order approving of the final report should have been set aside, and accordingly the decree of the district court is REVERSED.