PETER CROGHAN, Appellant, v. WILLIAM UMPLEBAUGH, Appellee.

NEW TRIAL: Grounds—Perjury. Perjury on the material issues of a cause is not ground for a new trial.

*Appeal from Harrison District Court.—E. B. WOODRUFF,*
Judge.

MONDAY, MAY 14, 1917.

ACTION in equity for a new trial. Demurrer to petition sustained. Judgment dismissing petition. Plaintiff appeals.—*Affirmed.*

*Cochran & Barrett,* for appellant.

*H. L. Robertson,* for appellee.

GAYNOR, C. J.—On the 8th day of May,
1914, the plaintiff herein filed his petition, on the equity side of the calendar, praying that a certain judgment, heretofore entered against him in a replevin suit, be set aside, and a new trial granted. The facts are that the defendant herein, William Umplebaugh, commenced a certain replevin suit against the plaintiff to obtain the possession of one red calf. The action was originally commenced in the justice court; afterwards transferred to the district court. In the district court, the case was tried, and on the 31st day of March, 1914, defendant obtained a judgment against the plaintiff for the possession of the calf and for costs of the suit. Upon the entry of judgment, this plaintiff, defendant in said suit, filed a motion for a new trial, setting out, as he says, all the facts known to him, and all the facts that he could discover, by reasonable diligence, as grounds therefor; but the motion was overruled, and judgment rendered upon the verdict. Thereupon, this action was commenced in equity to set aside the judgment, and for a new trial.

The basic facts, and the only facts, upon which plaintiff predicates his right are: First, that one W. H. Barnsby, a witness for the plaintiff in that cause, gave false testimony on a very material point in the case,—to wit, testified that the calf in controversy could not have been sired by a certain Red Poll bull and dammed by a certain graded

*(margin note: NEW TRIAL: grounds: perjury.)*

white-faced cow; second, that one C. A. Wilson, a witness for the plaintiff in said action, falsely testified that a certain bull was purchased on the 15th day of July, 1912, and was not turned into the pasture until July 27, 1912, and it is said that this evidence is material as showing when the calf in question was begotten, and was one of the main points upon which the verdict was based; third, that the plaintiff in said suit, by his attorney, introduced a certain forged date on a check; that the date had been changed from July 1st to July 15th for the purpose of establishing a fact in controversy,—to wit, that the bull had not met with the cow until after July 15th.

Plaintiff says that he could not and did not acquire knowledge of this false testimony and deceit prior to the entering of judgment; that he has recently found, and is now able to show, that said testimony was false. Upon this he bases his right to a new trial. Defendant demurred to the petition on the ground that the facts stated do not entitle the plaintiff to the relief demanded. This demurrer was sustained, and plaintiff's petition dismissed. From this, plaintiff appeals.

The only question presented is whether or not those facts, conceding them to be true, entitle the plaintiff to a new trial. The question here submitted is not new. It was before the Court of King's Bench in England as far back as 1815—perhaps further back. We find the case of *Warwick v. Bruce,* the opinion written by Lord Ellenborough, Chief Justice, 4 Maule & Selwyn 140. In that case, a new trial was asked on the ground of perjury committed by witnesses adverse to the complainant. In that case, two of the plaintiff's witnesses had been indicted for perjury committed upon the trial. The defeated party asked for a rule restraining the enforcement of the judgment until the criminal cases were disposed of, and supported his claim by his own affidavit. A rule was granted by the court, and

the matter brought before the King's Bench. Lord Ellen-
borough said:

"It would be highly dangerous to allow this rule to be
made absolute. For this would be a receipt to every person
after verdict and judgment against him, how to delay the
fruit of such judgment by indicting some of the plaintiff's
witnesses for perjury. And should this rule be made abso-
lute it would perhaps prevent the plaintiff from being a
witness at the trial of the persons indicted. And because
this seemed to be a new and dangerous experiment, the court
directed the rule to be discharged with costs."

It is apparent to anyone who is familiar with the pro-
cedure in the trial of contest causes that truth lies some-
where hidden in the controversy. The purpose of the trial
is to search for and ascertain the truth. Evidence is the
means by which the truth is brought to the knowledge of
the triers. It is the duty of the parties to present the truth.
It is their duty to ascertain and determine what the truth
is before the trial begins, and to present, on the trial, the
full truth and expose all that is false. It is apparent that,
when two witnesses testify to the existence of diametrical-
ly opposed facts, one or the other has testified falsely. A
thing cannot be and not be at the same time. It is the duty
of the trier to separate the chaff from the wheat, the dross
from the gold, the truth from the falsehood, and get at the
very right of the matter. It is the duty of the jury to
separate the false from the true and rest their verdict upon
the truth. It is the duty of the parties to the suit, when
they enter upon the trial, to see to it that the falsehood is
exposed and the truth is laid bare to the observation of the
jury. Where the record shows a mingling of the false and
the true, the presumption is that the verdict rests upon
the truth as exposed in the record. No one can then com-
plain of the result, unless, by fraud, falsehood or deception,
or some extrinsic means, he is prevented from fully pres-

enting his case to the jury, so that it may see for itself, and determine for itself, from the conflicting testimony and unreconcilable conditions, what the truth is. It would seem that one ought not to profit by his own wrong; that one ought not to retain the fruits of victory obtained through means of perjured testimony. But we cannot assume that the verdict of the jury is founded on false testimony. At the very threshold of the controversy, the law imposes upon the parties litigant the duty of so presenting their case that the jury can distinguish that which is false from that which is true. To this end, it is given them to present freely all their evidence and to cross-examine the witnesses who appear against them. Parties are presumed to come into court with clean hands, and to know what the very truth is upon which they predicate their claim against their adversary. They are presumed to know then that that which is inconsistent with the truth is false, and they are called upon to meet it and expose it upon the trial. If taken by surprise, it may be, in some cases, that courts would grant further time for investigation as to the truth of the particular matter. However, when they proceed to final judgment upon the record made, they are bound by the verdict returned, even though, perchance, false testimony may be introduced by the adversary. With the means for investigation, with the means offered the party for exposing the falsehood, we must presume that this was done before the jury on the trial, and that the verdict did not rest upon such false testimony. We must assume that the jury ignored it. It is the jury's duty to weigh the testimony; to distinguish the false from the true. They are the judges of the credibility of the witnesses, and the weight to be given to their testimony. They are not bound to take testimony of any witness as true, and should not do so, if, for any reason, it is untrue or unreliable. Where there is a sharp controversy over the existence or nonexistence of ma-

terial facts, the fact exists or does not exist, independent of evidence of the fact. The very controversy suggests the thought that one or the other must give false testimony in support of that which is not true, if he would maintain his contention. It is one of the hazards of the trial, against which the parties must arm themselves, and in the trial defend themselves against. Relief against this is not found in the granting of new trials, but rather in the enforcement of the criminal laws against perjury,—laws which, we regret to say, are not invoked often enough.

We think the court was right in sustaining the demurrer. In support of this ruling, see *Graves v. Graves,* 132 Iowa 199, and cases therein cited; *Peterson v. Blanton,* 76 Ala. 264. The judgment of the court is, therefore,—*Affirmed*.

LADD, EVANS and SALINGER, JJ., concur.