## WEATHERS v. ROBERTS.

No. 10327—Opinion Filed Dec. 6, 1921.

(Syllabus.)

1. **Partnership—Enforcement of Contract—Accounting—Prematurity of Action.**

In the month of August, 1917, R. and W. entered into an agreement, whereby W. was to finance the deal, and R. was to go among the farmers of Jackson county and buy for future delivery 200 bales of cotton of the 1917 crop. One dollar per bale was to be paid in cash at the time of entering into the contract of purchase with the farmer; the balance was to be paid when delivered to W. After the delivery of the cotton, W. was to sell the same on the market, and the proceeds were to be shared equally between R. and W. R. performed his part of the agreement and, after approximately 60 bales had been delivered, W. repudiated the agreement claiming that R. had no further interest in the cotton received or to be received, whereupon R. instituted an action praying for an accounting, alleging the insolvency of W. and praying for the appointment of a receiver, etc. Held, action not premature.

2. **Evidence—Private Documents—Proof of Execution.**

In order to render a private document admissible in evidence its execution must be proved. Proof may be made by the evidence of those who can testify to the fact of its execution.

3. **Same—Report of Sale on Cotton Exchange.**

Where it is sought to introduce in evidence a report of the sale of cotton on the New York Cotton Exchange, the genuineness of such report must be proved and in addition thereto, under section 2, ch. 97, of the Session Laws of Oklahoma, 1917, p. 146, it must be shown: First, that the sale was made in accordance with the rules of the New York Exchange; second,

that the sale was actually executed on the floor of such exchange and performed or discharged according to the rules thereof; and third, that the sale was made through a regular member in good standing of such exchange.

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by John H. Roberts against W. E. Weathers to enforce partnership contract. Judgment for plaintiff, and defendant brings error. Affirmed.

S. B. Garrett and G. E. Thorp, for plaintiff in error.

Guy P. Horton, for defendant in error.

PITCHFORD, V. C. J. John H. Roberts, defendant in error, brought this action in the district court of Jackson county, Okla., against W. E. Weathers, plaintiff in error, seeking to recover judgment for one-half of the net profits growing out of a certain cotton transaction between the parties. Hereafter, for convenience, the parties will be referred to as they appeared in the trial court.

The plaintiff claims that on or about the 1st day of August, 1917, he and the defendant entered into a partnership agreement for the purpose of buying and selling cotton and cotton seed. Under the agreement, the plaintiff was to visit the cotton growers in Jackson county and purchase cotton and cotton seed to be later delivered to the defendant as the same was gathered and ginned. The defendant was to finance the deal. The plaintiff was to pay one dollar down for each bale of cotton as part of the consideration on the purchase price, and one dollar per ton for the cotton seed, the remainder to be paid in cash by the defendant when the cotton and cotton seed were delivered to him. The cotton was to be contracted for on the basis of 20 cents a pound, the cotton seed to be paid for at the price being paid for by the gin at the time of the delivery. After the cotton and cotton seed were delivered, paid for and sold, and the expenses had been paid, plaintiff and defendant were to divide equally between them any profit that might be made. In pursuance of the agreement so made, plaintiff went over Jackson county and purchased 200 bales of cotton and 100 tons of cotton seed. After plaintiff had performed his part of the agreement, defendant repudiated the same, claiming he had sold for future delivery all the cotton contracted for by plaintiff, but refused to give plaintiff any information regarding the price received

for the cotton, and was attempting to defraud plaintiff by denying he had any further interest in the premises. It was further claimed that the defendant was insolvent and unable to respond in damages, and plaintiff asked that the partnership agreement be dissolved and an accounting had: that a receiver be appointed to receive such cotton and cotton seed as had not been delivered, and that he be instructed to take charge of all cotton and cotton seed on hand and sell the same and divide the profits between plaintiff and defendant, and that defendant be restrained from disposing of or in any manner transferring said cotton or cotton seed.

On the 25th day of February, 1918, plaintiff filed a supplemental petition in which he alleged that 170 bales of cotton and 68 tons of cotton seed had been delivered to the defendant.

To the original and supplemental petition, the defendant filed a motion to dismiss, on the ground that when the original petition was filed on October 5, 1917, nothing was due plaintiff at that time; that the claim of plaintiff was based on alleged partnership, and such transactions were not completed; that no profits could be estimated or determined until the transactions were completed; that no accounting or partnership settlement could be had for the reason that the alleged partnership transactions were not completed so that it could be ascertained whether there were losses or profits to share, and no accounting could be had until the completion of all the alleged transactions, so as to determine whether there should be losses or profits, and the action was prematurely brought. This motion was overruled. Defendant then filed a demurrer, which was practically the same as the motion to dismiss. The defendant then filed his answer, in which the partnership was denied.

There is no denial, however, of the agreement as to buying of the cotton and cotton seed by plaintiff. The defendant admitted that the plaintiff had bought the amount of cotton alleged, but contended that, after plaintiff had purchased said cotton, the price of cotton began to go down and on the 5th of September the defendant sold 100 bales of the cotton at the price of 20¼ cents per pound and on the 12th day of September he sold on the market the other 100 bales of said cotton at the same price.

It was further contended by defendant that it was agreed between plaintiff and defendant at the time the cotton was con-

tracted for from the farmers that in case the price of cotton should go down, then the defendant should sell so there would be no loss should the price go below 20 cents.

The jury returned a verdict in favor of plaintiff for $2,380.33, upon which judgment was duly entered, from which the defendant appeals. While the defendant assigns numerous errors for reversal, the same may be summarized under two heads: First, that the plaintiff's action was prematurely brought; and, second, error of the court in excluding certain evidence. We will consider these propositions in the order named.

It is the contention of the defendant that one partner cannot maintain an action in law against another partner to recover an amount claimed by him, by reason of partnership transactions, until there had been a final settlement of the affairs of the concern by discharging its liabilities, collecting its assets, and definitely ascertaining the surplus to a share of which he is entitled. But, in the instant case, there is no material dispute as to the agreement to purchase the cotton and the cotton seed and to share in the profits. The allegations contained in the petition and the answer clearly establish the partnership relation. The conflict arises in the contention of the defendant that at the time the agreement was entered into, it was agreed that if the price of cotton went below 20 cents, then the defendant was to protect himself by selling the cotton for future delivery; the contention of the plaintiff being that, after the cotton contracted for had been delivered by the farmers and paid for, then defendant was to dispose of the same, and then the profits, if any, were to be divided equally between plaintiff and defendant.

It is in evidence that, after plaintiff had performed his part of the agreement, which was prior to the bringing of the action, he was informed by the defendant that the 200 bales had been sold because the price of cotton had declined. Plaintiff asked for some evidence of this sale, which the defendant refused to furnish and refused to recognize that plaintiff had any further interest in the cotton, whereupon plaintiff instituted action.

In the case of Caley v. Mills et al. (Kan.) 100 Pac. 69, the first paragraph of the syllabus is as follows:

"Where a party to an agreement for the sale of personal property, before the time of performance arrives, expressly refuses to perform it, the promisee may treat such renunciation as a breach and at once bring an action therefor."

In the body of the opinion, we find the following language:

"The defendant now claims that the action was prematurely brought. This question does not appear to have been presented to the district court in any other manner than by a general objection to any testimony under the petition. It is true that the petition alleged that the cattle were to be delivered on October 27, 1904, and that the petition was filed on that day. It may also be conceded that the defendant had all of that day in which to perform his contract, but if he repudiated the contract, and absolutely refused to perform it, the plaintiffs were not obliged to wait until the expiration of the full time before bringing their action for damages. If a party disables himself from performing his contract, or before the time for performance arrives expressly renounces it, the promisee may treat this as a breach, and at once bring an action therefor."

The plaintiff at the time this action was filed alleged the insolvency of the defendant and asked for the appointment of a receiver. While the receivership was denied, however, to all intents and purposes the same was granted, as the court required the defendant to give bond, conditioned that he would pay the amount of the judgment recovered by plaintiff. In our opinion, the suit was not premature. All rights claimed by plaintiff had been repudiated by defendant. The 200 bales of cotton contracted for had been secured by plaintiff, he had devoted some time to this end, and when informed that he had no further interest in the cotton, he was not required to sit idly by and allow the defendant to appropriate all the profits of the enterprise, especially when it was alleged that defendant was insolvent. Upon the trial, it developed that the cotton contracted for at 20 cents per pound was delivered to defendant and was sold for 27 cents per pound, the profit being $35 per bale.

The next contention of the defendant is that the trial court committed error in excluding certain evidence. The defendant testifies in part as follows:

"When we began taking orders cotton was worth about 25 cents a pound at October delivery. We were taking orders at 20 cents a pound. The understanding was, if the market should go as low as 20 cents, I would hedge this cotton, put the money up and sell the cotton to protect any further loss. Cotton went down quite a little bit for several days, but came back

up on the 12th, and I sold the second 100 bales at twenty and one-fourth cents, or twenty-five one-hundredths of a cent more than we paid for it (R. 118). I had to put up $1,500 margin with my broker in order to sell 100 bales on the exchange. The second 100 bales I sold on the exchange was the second 100 bales of orders I took from the farmers."

Here defendant offered, as confirming his evidence as to sale of the cotton, the following letter or report:

"E. W. Wagner & Co. 822 Gravier St.,
"New Orleans, 9-7-17.

"W. E. Weathers, Oklahoma City.

"Dear Sir: We have this day made the following transaction for your account for future delivery as stated below, subject in all respects to the by-laws and rules of the Exchange where executed, and the United States Cotton Future Act, section 5, viz.:

"Bought.

"Sold.

"Amt. Dely. Price. Remarks.

"1 Dec. 20.25 N. Y.

"It is agreed and well understood that the buyer or seller of this cotton is to keep them fully margined $————— per bale under normal conditions and from $5 to $15 per bale on erratic market or when prices attain apparently low or high values. It is further understood that on all marginal business the right is reserved to close transaction when margins are running out without further notice and to settle contract in accordance with the rules and customs of the exchange where order is executed. All orders for purchase or sale of any article are received and executed with the distinct understanding that actual delivery is contemplated and that the party giving the order so understands and agrees.

"Respectfully,

"E. W. Wagner & Co., Per G.

"E. & O. E."

The defendant claims that he made this deal through the agent of the Board of Trade at Oklahoma City; that this representative takes and sends orders either to New York or New Orleans. It appears that the foregoing exhibit shows all of the words, including the signature of E W. Wagner & Co., were printed except the abbreviation "Per" and the letter "G."

Under section 2, ch. 97, Sess. Laws of Oklahoma 1917, p. 146, before defendant would be authorized to introduce this evidence, it was his duty to first establish that the sale was made in accordance with the rules of the New York Exchange; second, that the sale was actually executed on the floor of the New York Stock Exchange according to the rules thereof; and third, through a regular member in good standing of said exchange. The letter, circular, or report, however it may be denominated, failed to establish a single one of these necessary requirements, even if its genuineness had been fully proven. The defendant cites the following authorities as supporting his contention that error was committed in excluding this evidence: Lamb Lumber Co. v. Benson et al. (Minn.) 97 N. W. 143; First Nat. Bank of Cedar Rapids v. Erickson (Neb.) 31 N. W. 387; Persons v. Smith (N. D.) 97 N. W. 551.

Lamb Lumber Co. v. Benson et al., supra, is not in point. There, an action had been brought to foreclose a lien for lumber. The complaint alleged that on August 1st the defendant entered into a contract with Benson to build a barn for him; that on the 9th of August plaintiff made a contract with Benson to furnish the lumber for the barn; that it did so furnish and deliver such lumber. A proper lien statement and affidavit had been duly filed. The answer admitted that the plaintiff furnished certain lumber, which was used in the construction of the barn, but denied that the plaintiff so furnished the particular lumber alleged in the complaint. The trial court refused to admit certain exhibits offered by the plaintiff, because no proper foundation was laid therefor. These exhibits were in form receipted tickets for each load of lumber claimed to have been delivered, and contained the number of the order for the lumber, the date of delivery, a detailed statement of the kind, dimension, quality, and price thereof. These tickets purported to have been signed by the contractor or his foreman. The objection to the admission of the tickets was that the signatures thereto were not proven. There was no substantial dispute that the lumber represented by these tickets was not delivered as claimed. The appellate court held that, while strict proof of the signatures to the tickets was not made, there was ample competent evidence to show that the lumber described in the tickets was actually delivered upon the defendant's premises as claimed; hence it was not reversible error to admit the tickets in evidence.

In First Nat. Bank of Cedar Rapids v. Erickson, supra, the defense was founded upon a certain printed warranty alleged to have been delivered to defendant by plaintiff's assignor at the time of the execution of the notes sued on. The execution and delivery of this warranty was denied by the plaintiff. Defendant testified, in substance, that the warranty was delivered to and received and relied upon by him as such. The appellate court held that dedendant's evidence was sufficient, prima facie, to permit the introduction of the instrument in evidence; that the denial of the delivery of the warranty by plaintiff's witnesses presented a question of fact to be decided by the jury.

In Persons v. Smith, supra, the third paragraph of the syllabus is as follows:

"A bill of sale which describes certain notes and mortgages by naming the parties thereto, and giving their place of residence and the county in which the mortgages are recorded, and which is in the possession of the grantee, is prima facie sufficient to identify the notes and mortgages, and to convey the title thereto and is admissible as evidence of the grantee's ownership."

The facts in the case cited by the defendant are entirely different from those in the case at bar.

In 4 Cyc. of Evidence, 829, the rule is stated as follows:

"In order to render a private document of any sort admissible in evidence, its execution must be proved. This proof may be made by the evidence of those who can testify to the fact of the execution, or, in some states, by the official certificate of the acknowledgment of its execution before an officer authorized to take such acknowledgments and whether admitted to record or not. But in some states the instrument, though properly acknowledged, in order to be admitted in evidence without proof of its execution, must have been duly recorded."

In 22 C. J. par. 1109, the rule is stated as follows:

"The mere fact that a letter purports to have been written by the person who is claimed to be the writer thereof is not alone sufficient to warrant its reception in evidence, but it is necessary that there shall be some other proof of its authenticity and genuineness. The usual method of proving the genuineness of a letter is by proof of the handwriting; but other evidence may be resorted to for this purpose. Thus a letter not in the handwriting of the alleged sender may be looked into for internal evidence of the source from which

it came, as for instance the fact that it relates to matters which are known only to the alleged sender. A telegram, like a letter, is not admissible in the absence of proof of its authenticity either by proof of the handwriting, where the original message is offered, or by other evidence as to its genuineness."

This question, however, seems to be settled by section 5114, Rev. Laws of Oklahoma, 1910, which provides that:

"Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made the entries, that such entries are correct, and where made at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county or upon proof that the same were made in the usual course of business."

There is no evidence to show that this purported confirmation of sale of the 200 bales of cotton was ever issued by E. W. Wagner & Co. It is true that the printed form has the name of E. W. Wagner & Co. printed thereon, but this is not sufficient. There is nothing indicating the authority of "G" to act for E. W. Wagner & Co.; nothing to show who "G" was. As we have stated, the instrument was in printed form except the two words "Per." and "G". We fail to discover any error in the court in excluding this evidence.

The issues of the respective parties were fairly submitted to the jury under proper instructions. A verdict was returned in favor of plaintiff, and from an examination of the entire record, we approve of the verdict so returned.

We conclude that the judgment of the trial court should be affirmed, and it is so ordered.

HARRISON, C. J., and McNEILL, ELTING, and NICHOLSON, JJ., concur.