Rosie Belle Conrad, Appellee, v. May R. Hopkins, Appellee, et al., Appellant.

**GUARDIAN AND WARD:** Bonds—Adjudication.  A finding by the court as to the amount due from a guardian to a ward, rendered on a formal hearing on the guardian's final report and on objections thereto, constitutes a final adjudication against the bondsman who enters a personal appearance at said hearing.

*Appeal from Pottawattamie District Court.*—O. D. Wheeler, Judge.

May 15, 1923.

Action on guardian's bond, brought by the ward, after attaining her majority, against her guardian and guardian's surety on the bond, to recover her estate.  At the close of all the evidence, on motion of plaintiff, the court directed a verdict for plaintiff.  Facts appear in the opinion.  Defendant Konigmacher, surety, appeals.—*Affirmed.*

*Kimball, Peterson, Smith & Peterson,* for appellant.

*Paul E. Robertson,* for appellee.

Arthur, J.—On November 16, 1915, May R. Hopkins was appointed guardian of the property of Rosie Belle Conrad.  May R. Hopkins is the mother of Rosie Belle Conrad.  May R. Hopkins qualified as such guardian, and filed her bond in the penal sum of $1,000, with C. Konigmacher, appellant, as surety.  Funds belonging to the ward in the amount of about $500 were received by the guardian.  On December 28, 1920, May R. Hopkins filed her final report.  On December 29, 1920, objections to the report and application for discharge of guardian were filed by the ward, stating that she had reached her majority, and was entitled to receive the funds belonging to her that had come into the hands of her guardian; that said final report showed that there was due and owing to her the sum of $500, with 8 per cent interest thereon from the date of the notes referred to in the report; that she had not received any of the funds coming into the hands of her guardian; that, if the report is approved and the guardian

discharged and her bond exonerated, it will deprive the ward
of her estate; that the note referred to in the report, given by
Frank W. Hopkins to the guardian, evidencing the loan of the
ward's funds to Frank W. Hopkins, was signed by C. Konig-
macher, jointly with Frank W. Hopkins; that the report shows
that the guardian has defaulted in her undertaking on her bond;
and that an order should be made, imposing a penalty of $100,
as provided by Code Section 3201. Objector asked an order
requiring her guardian to pay forthwith into the office of the
clerk of the district court $500, with interest thereon, together
with the penalty of $100, and in default of such payment by the
guardian, that C. Konigmacher, surety, be ordered to pay said
amounts into the hands of said clerk.

The report, with objections thereto, was by the court set
down for hearing on January 5, 1921. Notice of the hearing
was made upon Rosie Belle Conrad, ward, and upon C. Konig-
macher, surety on the guardian's bond. Hearing was had on
January 5, 1921, and the guardian and ward appeared at the
hearing, and C. Konigmacher, surety on guardian's bond, ap-
peared in person and by his counsel, Kimball, Peterson & Smith.
On the hearing, the court found that it had no authority to
require Konigmacher, surety on the bond, to pay into court the
funds received by the guardian, as applied for in the ward's
objections to the report, and the order proceeded:

"And the matter coming on for hearing on the final report,
the court finds that the final report should not be approved;
that the final report shows that the guardian has not accounted
to the ward for funds in his hands, but has loaned the same
without authority from the court, and finds that there is now due
from the guardian to the ward the sum of $500, with interest
thereon at 6 per cent from the date upon which the stock in the
Stock Yards Company was sold, under the order of the court
heretofore entered. It is therefore ordered that the guardian pay
over, on or before the tenth day of January, 1921, the sum of
$500, with interest, and turn over to her any and all papers,
notes, and mortgages of the estate in her hands belonging to the
ward, and that, unless such order is complied with within said
time, that suit be brought on the bond of the guardian, in the
name of the ward, who has now attained her majority."

May R. Hopkins, guardian, failed to comply with the order of the court made on January 5th, and failed to turn over to her ward the funds which had come into her hands; and on January 31, 1921, this suit was instituted against May R. Hopkins, guardian, and C. Konigmacher, surety on guardian's bond, to recover the amount of the funds belonging to the ward which had come into the hands of the guardian.

Defendant Konigmacher filed separate answer and cross-petition, alleging that, shortly after May R. Hopkins was appointed guardian of her daughter, Rosie Belle Conrad, an order of court was secured, authorizing the guardian to sell certain shares of stock which came into her hands; that the stock was sold, and the $500 received from the sale was by the guardian loaned to her husband, Frank Hopkins; that Frank Hopkins gave the guardian his note for said amount, bearing 8 per cent interest. Konigmacher further alleged that May R. Hopkins and her husband, Frank W. Hopkins, conspired together to defraud the defendant C. Konigmacher, and to compel him to make payment of the said $500 for their use and benefit; that the defendant May R. Hopkins does not allege or show that she has made any effort whatever to collect said note given by her husband, Frank W. Hopkins, nor does she allege or show that she is without means, simply alleging that she is informed that he is unable to pay; that the plaintiff filed objections to the final report of her guardian, and in her objections prayed that the defendant C. Konigmacher be ordered to account to her for the money, without first exhausting her remedy against the guardian; that the guardian was present in court, stating that the ward was entitled to the money, and that she was unable to pay it, and further asking that the defendant C. Konigmacher be served with notice of hearing on final report; that, at the same time, the plaintiff appeared in court, objecting to the final report, and urging that the defendant C. Konigmacher be made to account to her for the said $500 and interest, and in the further sum of $100 as penalty; that Rosie Belle Conrad and May R. Hopkins conspired together for the purpose of defrauding said C. Konigmacher of said sums of money.

Konigmacher further alleged that the guardian and mother of Rosie Belle Conrad, after marrying Frank W. Hopkins, kept

and supported Rosie Belle Conrad for a period of something over five years, providing for her clothing, maintenance, and education, and made no charge therefor, nor application that such expense be paid from the ward's estate, and that such failure to make such application or charge was a part of the conspiracy to compel Konigmacher, surety on the bond, to pay over the funds which came into the guardian's hands; that Rosie Belle Conrad and her mother, May R. Hopkins, and Frank W. Hopkins, husband of May R. Hopkins, conspired to defraud Konigmacher, by not reporting expenses of care, clothing, support, and education of Rosie Belle Conrad, and thus showing payment of the funds to the ward.

Plaintiff moved to strike the answer of Konigmacher on various grounds, the substance and effect of which were that the allegations of the answer were irrelevant and redundant, and did not state a defense to the cause of action alleged in the petition. Motion to strike was sustained. The case came on for trial to a jury. Plaintiff was called as a witness in her own behalf, and testified that she reached her majority on December 16, 1920, and that she had received no funds from her guardian, directly or indirectly, since the hearing on the final report of the guardian.

On cross-examination of witness, counsel for Konigmacher sought to elicit that her guardian, her mother, had furnished her with board and clothing and other expenses, and whether she had received anything from her guardian prior to January 5, 1921, the time of the hearing on the final report; and witness was not permitted to answer. At this time, Konigmacher offered an amendment to his answer, making substantially the same allegations as contained in his original answer, which amendment was refused.

At the close of all the evidence, on motion of appellee, the court directed a verdict in her favor for the sum of $500, with interest at 6 per cent from November 16, 1915. The grounds of the motion were that the undisputed evidence showed that the guardian executed the bond in suit, and that appellant, Konigmacher, signed the bond as surety; that May R. Hopkins, guardian, received $500 belonging to her ward, and had not paid over to her ward the funds coming into her hands; that the court, on

January 12, 1921, made a finding that there was due said ward from her guardian $500, with 6 per cent interest from November 16, 1915, and had made a decretal order requiring the payment of said funds over to the ward; and that such order had not been complied with by the guardian or by Konigmacher, her surety.

Errors relied upon for reversal are that the court erred in striking defendant Konigmacher's answer, alleging fraud and conspiracy; that the court erred in sustaining the objection to the question asked appellee as to whether or not she had received any money prior to January 5, 1921, the time of the hearing on the final report; that the court erred in directing a verdict against appellant.

The whole question in the case is whether the findings and order of the court made on January 5, 1921, upon the hearing on the final report and objections thereto, were a final adjudication that there was in the hands of the guardian $500, and interest thereon, due her ward.

Appellant, Konigmacher, was given notice of the hearings upon the final report. He appeared at the hearing in person and by counsel. No appeal was taken from the order of the court on the final report. In the instant action, Konigmacher sought, by the defense interposed, in effect to reopen and have tried the same questions that were before the court at the hearing on the final report and objections thereto. It was merely an attempt on the part of Konigmacher to relitigate the same questions which were presented to the court on the final report and objections thereto. The decretal order of the court entered on January 5, 1921, was an adjudication of the issue sought to be raised in the instant case, and was binding upon the surety, Konigmacher. *Knox v. Kearns,* 73 Iowa 286; *Knepper v. Glenn,* 73 Iowa 730. Particularly does this rule apply in the instant case, where appellant appeared at the hearing in person and by counsel. If he did not do so, appellant then had the opportunity to object to the report and have heard the very questions which he urges in his attempted defense to the instant action. He had opportunity to and must then have been prepared to meet and expose any error or fraud in the report, and to have it ascertained by the court what was the actual and true amount of money which

was due from the guardian to the ward, if any. Such was the purpose of the hearing on the final report.

Counsel for appellant cite cases holding, in effect, that a surety on a probate bond, such as here involved, is concluded by decree of court rendered upon an accounting by his principal as to the amount of the principal's liability, in the absence of fraud or collusion. But we think the fraud must be such as to prevent the unsuccessful party, by the contrivance of his adversary, from having a fair trial or hearing. In *Graves v. Graves*, 132 Iowa 199, we discuss the question of fraud that would vitiate a judgment, and there cite with approval *Pico v. Cohn*, 91 Cal. 129 (25 Pac. 970, 27 Pac. 537, 13 L. R. A. 336, 25 Am. St. 159). In the California case, the court said:

"When parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination, * * * it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy. What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest. *United States v. Throckmorton*, 98 U. S. 65, 66."

Appellant, Konigmacher, appeared in person and by his attorneys, and had his day in court. We think that the order of the court of January 5, 1921, finding the amount due from the guardian to her ward, was conclusive upon both the guardian and Konigmacher, surety on her bond. At the hearing, there was an adjudication of the amount that was due from the guardian to the ward, and appellant, Konigmacher, was bound thereby, and could not maintain the defense interposed by him in this action on the bond.

Results in affirmance of the case.—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.