EMMA K. MURPHY et al., Appellants, v. WILLIAM J. HAHN et al., Appellees.

No. 38727.

FEBRUARY 12, 1929.

REHEARING DENIED JUNE 24, 1929.

*S. K. Stevenson*, *W. J. Baldwin*, and *E. E. Collins*, for appellants.

*C. B. Russell* and *V. L. Sharp*, for appellees.

WAGNER, J.—The pleadings in this case are quite voluminous, and likewise the abstract of the evidence, and to refer to all of the same in detail would unduly extend the length of this opinion, and we can do no more than, in a large measure, to draw our conclusions from the evidence.

William Hahn died April 6, 1919. Whether he died testate or intestate is one of the disputed questions. His wife, Louisa Hahn, survived him. The plaintiffs, his five daughters, and his son, William J. Hahn, constitute his only heirs at law. On June 9, 1919, the son, William J. Hahn, on his application, was appointed administrator of his father's estate. On August 10, 1920, said estate was finally settled and closed, and the administrator discharged. As a result of said final settlement, the widow received her distributive share of the personal property remaining after the payment of the debts and charges, and the remainder of the proceeds was divided equally among his six children, each child receiving, in said distribution, the sum of approximately $2,100.

As the five daughters married, from time to time, they and their respective spouses located upon farms not far remote from the home of the parents. The defendant William J. Hahn was married about the year 1903, and he and his wife, Bessie, and the children born to them, and his father and mother all resided together upon the home place until the time of the father's death. The widow, Louisa Hahn, died August 31, 1925.

On January 5, 1907, the father and mother executed unto the son a warranty deed for their real estate, consisting of approximately 200 acres, reserving to themselves a life estate therein, and on the same date, executed unto the son a bill of sale for the live stock, farming implements, machinery, household goods, and kitchen furniture.

It is the claim of the plaintiffs, as asserted in their petition, that, in 1903, the father and mother entered into an oral agreement to make a joint, mutual, and reciprocal will, by the terms of which it was to be provided that, if the father died first, all of the property was to go to the mother for the term of her life, and if the mother died first, the property should go to the father for life, and at the death of the survivor, the son should have the land, personal property, and farm machinery, and the daughters should receive the money in banks, share and share alike, and that, in addition thereto, the son should pay each daughter the sum of $300; and that the father and mother executed a will so providing. It is averred in the petition, in substance, that the defendant William J. Hahn was appointed administrator of the father's estate June 9, 1919; that the said estate has been settled, and the proceeds thereof, to be distributed, have been paid to the widow and children of William Hahn, "as shown by the records and files of said proceeding in the office of the clerk of the district court, which files and records are made a part of the petition." It is further averred in the petition, in substance, that, shortly after the death of the father, the son, William J. Hahn, fraudulently destroyed the aforesaid joint will, and fraudulently represented to the plaintiffs that the father left no such instrument; and that the plaintiffs did not discover the falsity of such statements and representations until after the death of Louisa Hahn on the 31st day of August, 1925. It is further averred in the petition, in substance, that the defendant William J. Hahn has failed to account for all of the certificates of deposit and the

proceeds thereof which belonged to the father at the time of his death, and for the rents accruing from the real estate. It is further averred in the petition that the plaintiffs, in accepting the proceeds of the administration of the estate from William J. Hahn, as administrator, acted under the advice of their then attorney.

The defendants answered both by general and specific denial, and further aver:

"The plaintiffs have, as a matter of law, failed to state a cause of action against these defendants, in that their pleadings show that their cause of action is barred by the statute of limitations and by laches in equity, and by their failure to allege facts necessary to entitle them to the relief demanded; that their allegations show their alleged cause of action to be previously adjudicated; that plaintiffs are not entitled to relief in a court of equity."

They further aver, in an amendment to the answer, that William Hahn died intestate, in April, 1919, and that his estate was fully administered upon, all as shown by the probate records with reference thereto on file in the office of the clerk, and that, as a part of such probate proceeding, a full account of his entire estate was had; and defendants specifically deny ever having in their hands any money or property which was not accounted for, belonging to either William Hahn or Louisa Hahn, and allege that a full and complete accounting was had by defendants of all such property.

Upon these issues, trial was had to the court, and at the close of plaintiffs' evidence, the court sustained defendants' motion to dismiss plaintiffs' petition and for judgment, and a decretal order was rendered, so declaring, and judgment entered against the plaintiffs for the costs. From this action by the trial court the plaintiffs have appealed.

The parties in the trial court recognized the suit as an equitable action, and the same was tried as such. Therefore, the cause is triable in this court *de novo*. In *Bridges v. Sams*, 202 Iowa 310, we declared:

"The motion to dismiss and for judgment is without statutory recognition, and was of no greater significance than an announcement on the part of the

appellees that they rested their case at the close of plaintiffs' testimony.''

See, also, *Brewster v. Brewster*, 194 Iowa 803; *Dolan v. Newberry*, 200 Iowa 511; *Matthews v. Quaintance*, 204 Iowa 520.

The appellants, in argument, contend that the allegations of defendants' answer relative to the statute of limitations and the pleading of former adjudication are insufficient. The facts  claimed by the appellees to constitute the adjudication are averred in the amendment to the answer hereinbefore referred to. The appellees allege virtually the same matters in their petition. It is true that the defenses of former adjudication and the statute of limitations are affirmative ones. As said in *Conklin v. Towne*, 204 Iowa 916, it is an elementary rule of pleading that the facts constituting the bar of the statute must be pleaded. However, we held in said case that, while the pleadings were informal and defective, in that they did not allege fully the facts constituting the bar, yet they did raise the question. In the instant case, as in the cited case, a motion to strike made by the appellees was overruled. Appellants, by their motion to strike, by one sweeping statement, sought to have stricken the entire answer, except a certain paragraph containing admissions. The portion sought in this manner to be stricken contained a denial and other defensive matter properly pleaded. It is provided in Section 11130 of the Code, 1924, that, in actions triable in equity, every defense in point of law arising upon the face of the petition shall be made by motion to dismiss, or in the answer or reply. In view of the statute and the allegations of appellees' answer, which the court properly refused to strike, we are disposed to hold that the pleading as to former adjudication and the statute of limitations is sufficient to raise said questions.

The district court was vested with power to appoint an administrator of the estate of William Hahn. While the appointment was improper, if there was a will in existence, yet the appointment  pointment of the administrator cannot be successfully asserted as having been made without jurisdiction. It then became the administrator's duty to account for all of the personal property belonging to said estate.

The appellee, William J. Hahn made his final report as administrator of said estate. During the administration, the appellants joined in an application for the citation of their brother with reference to his possession of personal property belonging to said estate. They made objections to the final report, and, on the advice of their attorney, accepted the amount to which they were entitled as shown thereby on final distribution.  The court had jurisdiction to appoint the administrator, and had jurisdiction of all of the necessary parties at the time of the approval of the final report and discharge of the appellee William J. Hahn as administrator. The order of discharge of the administrator granted in 1920 constituted an adjudication. *Bradbury v. Wells*, 138 Iowa 673; *Arnold v. Spates*, 65 Iowa 570; *Kows v. Mowery*, 57 Iowa 20; *Cowins v. Tool*, 36 Iowa 82; *Patterson v. Bell*, 25 Iowa 149.

In accordance with our statutory law, mistakes in settlement of estates may be corrected in a probate court at any time before final settlement and discharge, and also after that time by equitable proceedings, on showing such grounds as will justify the interference of the court. Section 12049 of the Code. It has been held that the settlement of the administrator's account is not conclusive as to property fraudulently omitted therefrom, and that in such case equity may be invoked to grant proper relief. *Tucker v. Stewart*, 121 Iowa 714. In said case we quoted approvingly from *Griffith v. Godey*, 113 U. S. 89, the following:

"It is well established that a settlement of an administrator's account by the decree of a probate court does not conclude as to property accidentally or fraudulently withheld from the account. If the property be omitted by mistake, or be subsequently discovered, a court of equity may exercise its jurisdiction in the premises, and take such action as justice to the heirs of the deceased or to the creditors of the estate may require, even if the probate court might, in such case, open its decree, and administer upon the omitted property. And fraudulent concealment of property, or a fraudulent disposition of it, is a general, and always existing, ground for the interposition of equity."

It is the claim of the appellants that the administrator failed to account for the rent which they claim that he owed his father

during the years that he occupied the farm, and for certain cer-  tificates of deposit and the proceeds thereof which they claim belonged to the father. It is their contention that he fraudulently failed to include the same in his inventory as administra- tor and to account for the same upon distribu- tion. If he was guilty of fraud in these respects, then the appellees are entitled to relief at any time within five years after the fraud was perpetrated (Section 11007, Div. 5, of the Code), or at any time within five years after the discovery of the fraud by the appellees. Section 11010 of the Code. This latter section does not contemplate actual knowledge of the fraud before the statute shall begin to run, but such knowledge or notice as would lead a man of reasonable prudence to make inquiries which would disclose the fraud. *Humphreys v. Mattoon,* 43 Iowa 556; *Nash v. Stevens,* 96 Iowa 616; *Clark v. Van Loon,* 108 Iowa 250; *Simmons v. Western Life Indemnity Co.,* 171 Iowa 429; *Van Wechel v. Van Wechel,* 178 Iowa 491; *Birks v. McNeill,* 185 Iowa 1123. The deed to the real estate in which the appellee William J. Hahn is named as grantee, with the reservation of a life estate in favor of his parents, had been on record for many years. The appellants had knowledge of its contents. Relative to the certificates of deposit in the banks, the same evidence which the appellants have introduced in the trial of the instant case was at all times accessible since the time of the death of the father. The information relative thereto could have been acquired immediately after the death of the father, and after the citation of the administrator, just as easily as it was obtained for introduction in the trial of the instant suit. An ordinarily prudent man, acting with diligence, would have discovered long ago what they claim to have discovered now. The instant case was concededly begun more than five years after the citation of the administrator in the probate court and his discharge. It is thus apparent that, in so far as the claims of the appellants relative to the rent for the real estate and the certificates of deposit and the proceeds thereof claimed to have been converted by their brother are concerned, they are barred by the statute of limitations.

Moreover, the burden as to the rent and the certificates of deposit was upon the appellants. Since William J. Hahn has been discharged as administrator, the presumption is that he did

 his full duty as such officer. The certificates which the appellants are claiming their brother should account for were in the name of William J. Hahn, or W. J. Hahn, at the time of the death of the father, William Hahn. The father had no middle name or initial. The evidence which the appellants have introduced fails to establish that said certificates belonged to their father. Many of the certificates which appellants contend should be accounted for were paid long before the death of the father.

William J. Hahn was used as a witness for the appellants, and examined by them with reference to a contract, or contracts, between him and his father and mother, and on cross-examination, identified a contract entered into between him and them on February 3, 1917, which he testified was signed by his father and mother, and which was properly introduced in evidence as a part of the cross-examination. This contract provides that all claims which each party has against the other have been and are fully settled, and further, that the son should support the father and mother in the same style and manner as has been done for a number of years, administer to their comfort, pay the taxes on the real estate, and keep up the repairs at his own expense, and that he should have the use of said farm without the payment of further rent. It is shown that this contract was prepared by Milton Remley. There is some testimony by some of the appellants and their spouses that the signature thereto is not that of the father, and that at that time he was of unsound mind. We cannot, in this opinion, refer to the evidence *in extenso*. Suffice it to say that, as to the rent and the certificates of deposit, we find that the claims which the appellants are now urging have not been established by the evidence, and are barred by the statute of limitations.

The only remaining thing for our consideration is the contention of the appellants that there was a will in existence at the time of the death of the father, and that they were misled by  false representations of their brother to the effect that the father left no will. It is shown that, in July, 1919, the mother made a will, willing all of her property to the appellee William J. Hahn. There is oral testimony that Murphy, an attorney of Iowa City, about the year 1903, drew a joint will for the father and

mother, providing for the disposition of their property in accordance with what is alleged by the appellants to have been the oral contract between said parties hereinbefore referred to. There is no competent evidence of the alleged contract. One of the appellants testified that she was at the home of the appellees a few weeks after her father's death, when the subject of a will was discussed among her, her mother, and brother, and that her brother said for them all to come home the next Sunday, and he would read the will, as one reading would do for all. The following Sunday, the appellants and their husbands appeared at the home, when they were told that their father left no will, and for them to go to Remley's office; that it was not "pa's will," but "ma's will." There is no competent testimony in the record that Remley had in his possession a joint will. It appears that, about February, 1926, some of the interested parties, in talking with Murphy, ascertained that he had, about the year 1903, drawn a joint will, as aforesaid, which he testifies was signed by William and Louisa Hahn, and witnessed by himself and by someone else around the office, but he does not know who. It is alleged in the petition, in substance, that the appellants knew nothing of the existence of such a will until after the mother's death, in August, 1925; and the testimony of the appellants is that they knew nothing about it until about February, 1926, when the information was obtained from Murphy that he had drawn such an instrument. In November, 1920, the mother testified in the district court, in an action brought to have a guardian established for her, that such a will was drawn by Murphy, years before. Some of the appellants were parties to this proceeding and present at the trial. With the knowledge claimed to have been obtained from the brother by one of the sisters a few weeks after the death of the father, and the knowledge obtained by the aforesaid testimony of the mother, its admissibility being assumed, the appellants were dilatory in not sooner acquiring the information from Murphy which they subsequently obtained.

We find it unnecessary to determine whether the appellants have established the existence of a will at the time of the death of the father, or whether they have made a case of fraud as against their brother, as alleged. The brother was appointed administrator. If such a will was in existence, then the property

which was distributed at the time of the final report would go to the mother for life, and thereafter, to the appellants. We have already disposed of the appellants' contentions as to the certificates of deposit and the rent. The proposition we are now considering relates only to what the brother, as administrator, had for distribution, as shown by his final report.

The issue at that time was: Who was entitled to the money in the hands of the administrator, and in what proportions? Everything which might have been litigated as incidental or essentially connected with this subject-matter (the money in the hands of the administrator) must be regarded as disposed of by the final order of discharge. *Tucker v. Stewart,* 121 Iowa 714; *Bradbury v. Wells,* supra; *Conrad v. Hopkins,* 195 Iowa 1162. While it is true that fraud may vitiate a final settlement of an estate, yet the fraud that will vitiate it must be extrinsic or collateral to the matter directly involved in the final settlement or adjudication. *United States v. Throckmorton,* 98 U. S. 61, 65; *Bradbury v. Wells,* supra; *Tucker v. Stewart,* supra; *Conrad v. Hopkins,* supra; *Hewitt v. Blaise,* 202 Iowa 1114; *Pico v. Cohn,* 91 Cal. 129 (25 Am. St. 159); *Croghan v. Umplebaugh,* 179 Iowa 1187; *Sudbury v. Sudbury,* 179 Iowa 1039; *Aschan v. McDermott,* 164 Iowa 750; *Sullivan v. Herrick,* 161 Iowa 148; *Guth v. Bell,* 153 Iowa 511; *Mengel v. Mengel,* 145 Iowa 737; *Kwentsky v. Sirovy,* 142 Iowa 385; *Richards v. Moran,* 137 Iowa 220; *Tollefson v. Tollefson,* 137 Iowa 151; *Graves v. Graves,* 132 Iowa 199. In *Kwentsky v. Sirovy,* supra, we said:

"The fraud or duress which will authorize the setting aside of a decree or judgment must be such as really prevented the unsuccessful party from having a trial. *Graves v. Graves,* 132 Iowa 199. In *U. S. v. Throckmorton,* 98 U. S. 65 (25 L. Ed. 93), it is said: 'But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was, in fact, no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise, or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff, or where an attorney fraudulently or with-

out authority assumes to represent a party and connives at his
defeat, or where the attorney regularly employed corruptly sells
out his client's interest to the other side,—these and similar cases
which show that there has never been a real contest in the trial or
hearing of the case, are reasons for which a new suit may be sus-
tained, to set aside and annul the former judgment or decree and
open the case for a new and fair hearing [citing many cases]. In
all these cases and many others which have been examined, re-
lief has been granted on the ground that, by some fraud prac-
ticed directly upon the party seeking relief against the judgment
or decree, that party has been prevented from presenting all of
his case to the court.' "

While the record establishes the fact that the attorney for
appellants advised the acceptance by them, on distribution, of
the amount shown by the final report, there is no allegation, evi-
dence, or suggestion that the attorney acted fraudulently or by
connivance in any degree with the administrator and his attor-
ney. Under the record in this case, it is manifest that the final
settlement and discharge of the brother, as administrator, con-
stituted an adjudication; that the appellants had a trial, or were
in no way prevented from having a trial, as to who and in what
proportions they were entitled to the money in the hands of the
administrator, as shown by his inventory and final report; and
that the facts upon which the appellants are now relying as con-
stituting fraud are not extrinsic or collateral fraud, but fraud
intrinsic in character, and such as inheres in the adjudication
rendered in the order of discharge. William J. Hahn, as an
officer of the court, which had full and complete jurisdiction, has
accounted for all of the money in his hands as such officer, and as
per the order of the court. Since he has so accounted, and since
the appellants have not shown any extrinsic or collateral fraud
which will vitiate the adjudication, said adjudication is final. If,
under the record, the adjudication could be set aside, then, in-
deed, judgments of courts of record avail little or nothing.

Thus it is found that the action of the trial court in dis-
missing plaintiffs' petition upon its merits and in rendering judg-

ment against the plaintiffs for the costs is correct, and the same is hereby affirmed.—*Affirmed.*

EVANS, STEVENS, DE GRAFF, MORLING, and KINDIG, JJ., concur.